## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MENACHEM LANDA, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC. and NISSAN MOTOR COMPANY, LTD.,<br><br>     Defendants. | No. _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

1. Plaintiff Menachem Landa ("Plaintiff") brings this action individually and on behalf of all persons in the United States who purchased or leased any 2014-2020 Nissan Rogue vehicle equipped with an Xtronic Continuously Variable Transmission[1] ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by Nissan North America, Inc., and Nissan Motor Company, Ltd., ("Nissan" or "Defendants"). Plaintiff alleges as follows:

### INTRODUCTION

2. This is a consumer class action concerning a failure to disclose material facts and a safety concern to consumers.

3. Nissan marketed and sold the Class Vehicles without disclosing that the Class Vehicles' Xtronic Continuously Variable Transmission ("CVT") was defective.

4. Specifically, Plaintiff is informed and believes, and based thereon alleges, that the CVT contains one or more design and/or manufacturing defects. The CVT is defective in the following ways (collectively, the "CVT Defect" or "Defect"): it causes sudden, unexpected shaking and violent jerking (commonly referred to as "juddering" or "shuddering"), stalling, or lurching when drivers attempt to accelerate their vehicles; it causes the vehicle to lag or delay

---

[1] On information and belief, the Class Vehicles are equipped with the Jatco CVT8 Transmission.

Case 3:21-cv-00232   Document 1   Filed 03/17/21   Page 1 of 60 PageID #: 1
CLASS ACTION COMPLAINT

when the driver tries to accelerate, causing an unsafe, unpredictable acceleration; it exhibits a hard deceleration or "clunk" when drivers either slow down or accelerate at low speeds; it causes complete transmission failure in the middle of roadways[2] and it suffers catastrophic failure, necessitating replacement.

5.     Nissan sold the Class Vehicles with a 5-year, 60,000-mile powertrain warranty that purports to cover the CVT. However, consumers have complained that their CVTs failed and required replacement just outside the 60,000-mile warranty period. As Class members have reported to the National Highway Traffic Safety Administration ("NHTSA"), Nissan's authorized dealerships are replacing transmissions both within, and just outside, the 60,000-mile warranty period. *See, e.g.,* ¶45(d) (three transmission failures, all requiring replacement, at approximately 45,000 miles); ¶45(g) (transmission failure requiring replacement at 67,000 miles); ¶45(h) (transmission failure 69,000 miles); ¶45(j) (transmission failure requiring replacement at 69,450 miles); ¶47(d) (transmission failure 46,000 miles); ¶50(a) (transmission failure 25,000 miles); ¶50(b) (transmission failure slightly over 40,000); ¶55(a) (transmission failure requiring replacement at 33,000 miles); ¶58(a) (transmission failure requiring replacement at 7,500 miles); ¶65 (transmission failure requiring replacement at 43,000 miles at a cost to the customer of $3440).

6.     The CVT Defect is inherent in each Class Vehicle and was present at the time of sale.

7.     Plaintiff is informed and believes that since 2013, if not earlier, Nissan has been aware that the CVT installed in the Class Vehicles would require frequent replacement, including replacements just outside of warranty, that the replacement transmissions installed would be equally defective as the originals, and that the CVT would cause the symptoms of the CVT Defect

---

[2] See, e.g., ¶ 71(i), *infra*, where a class member complains to the National Highway Traffic Safety Administration: "DRIVING ON THE HIGHWAY AT 65 MILES PER HOUR, THE VEHICLE SUDDENLY LOST POWER. BY THE GRACE OF GOD, I WAS ABLE TO MANEUVER OFF THE HIGHWAY WITHOUT BEING RUN OVER BY THE SEMI TRUCKS TRAVELING THE HIGHWAY WITH ME. I HAD THE VEHICLE TOWED TO A NISSAN DEALERSHIP WHERE I WAS TOLD THE TRANSMISSION WAS "DEFECTIVE" AND WOULD NEED TO BE REPLACED."

described above (juddering, lag when attempting to accelerate, hard deceleration, complete failure and other symptoms), and that the Class Vehicles' CVT would require frequent repair, yet Nissan continued to install the defective CVT. Moreover, Nissan not only refused to disclose the problem to consumers, but it also actively concealed, and continues to conceal, its knowledge concerning the CVT Defect.

8.    Nissan undertook affirmative measures to conceal CVT failures and other malfunctions through, among other things, Technical Service Bulletins ("TSB") issued to its authorized repair facilities only.

9.    Nissan had superior and/or exclusive knowledge of material facts regarding the CVT Defect as a result of its pre-production testing, design failure mode analysis, customer complaints made to NHTSA, and customer complaints made to dealers.

10.    As a result of Nissan's failure to disclose material facts regarding the CVT Defect to its customers, the Class has incurred significant and unexpected repair costs. Nissan's omission at the time of purchase of the CVT's marked tendency to fail just outside of warranty is material because no reasonable consumer expects to spend thousands of dollars to repair or replace essential transmission components in the early years of owning their vehicles.

11.    The CVT Defect is also material to consumers because it presents an unreasonable safety risk. Transmission malfunctions can impair any driver's ability to control his or her vehicle and greatly increase the risk of collision. For example, turning left across traffic in a vehicle with delayed and unpredictable acceleration is plainly unsafe. In addition, these conditions can make it difficult to safely change lanes, merge into traffic, turn, accelerate from stop light/sign, and accelerate onto highways or freeways. See ¶ 43-65, *infra*.

12.    Nissan's failure to disclose the alleged defect has caused Plaintiff and putative class members to lose use of their vehicles and/or incur costly repairs that have conferred an unjust substantial benefit upon Nissan.

13.    Had Nissan disclosed the CVT Defect to Plaintiff and Class Members, they would not have purchased the Class Vehicles, would have paid less for them, or would have required

Nissan to replace or pay for the replacement of the defective CVT with a non-defective version before their warranty periods expired.

**THE PARTIES**

**Plaintiff Menachem Landa**

14.     Plaintiff Menachem Landa is a citizen of New York, residing in Brooklyn, New York. Mr. Landa purchased his certified pre-owned 2016 Nissan Rogue from Nissan City of Port Chester in Port Chester, New York, on or around October 31, 2019.

15.     Prior to purchasing his vehicle, Mr. Landa visited and reviewed Nissan websites, including the Nissan City of Port Chester website, and read information about the Rogue touting the vehicle's attributes and benefits.  Mr. Landa also test drove the vehicle with a Nissan sales representative in the vehicle.  The Nissan sales representative touted the vehicle's attributes and benefits, including the smooth ride of the vehicle, which was a material factor in Mr. Landa's purchasing decision. He also reviewed the window sticker on the vehicle.  He reviewed materials that discussed the vehicle's warranty program and discussed the warranty with a Nissan sales representative.

16.     Shortly after he purchased his vehicle, Mr. Landa observed performance problems with his transmission. Specifically, his vehicle felt sluggish when accelerating, such as when merging onto a highway, with the engine revving with high RPMs. He also experienced his vehicle being slow to respond, sluggish, and jerky when driving on inclines, such as on mountain highways. In addition, when attempting to slow the vehicle by pressing the brake pedal, Mr. Landa would have to bear down unusually hard on the pedal and would experience hard jerking. Accordingly, on or around July 22, 2020, with approximately 49,973 miles on his vehicle, Mr. Landa returned to Nissan City of Port Chester to complain about the performance of his vehicle's transmission.  A Nissan technician rode with him in the vehicle, specifically driving up a hill, and the Nissan technician acknowledged the vehicle's sluggishness and delayed responsiveness. According to Mr. Landa's service record, the technician also noticed "slight vibration[, and]

performed [a] system diagnostic" but found "no codes stored or active." The technician "performed [a] TCM update," failed to diagnose the defect in the transmission, and did not make any repairs.

17.     Despite the TCM update, Mr. Landa continues to experience the symptoms of his vehicle's defect, including sluggishness and delayed acceleration particularly when driving uphill or merging onto the highway, delayed responsiveness, jerking, and other issues.

18.     On December 8, 2020, Mr. Landa, through his counsel, wrote to Nissan North America, Inc. to inform the company that he was experiencing the CVT Defect and to request appropriate relief, including repair of his Class Vehicle. To date, Nissan has not repaired Mr. Landa's vehicle, nor has it provided him any other relief.

19.     On February 3, 2021, Mr. Landa returned to Nissan City of Port Chester and requested repair of the CVT Defect. The technician failed to diagnose the defect in the transmission and did not make any repairs.

20.     At all times, Mr. Landa, like all Class Members, has attempted to drive his vehicle in a foreseeable manner in the sense that Mr. Landa has not abused his vehicle or used it for purposes unintended by Nissan. However, despite this normal and foreseeable driving, the Defect has rendered his vehicle unsafe and unfit to be used as intended.

**<u>Nissan</u>**

21.     Nissan North America, Inc. ("NNA") is a corporation with its headquarters in Franklin, Tennessee. It is organized and in existence under the laws of the State of California and registered to do business in the State of Tennessee. On information and belief, at all relevant times herein, Nissan North America, Inc. was engaged in the business of designing, manufacturing, marketing, distributing, and/or selling automobiles and other motor vehicles and motor vehicle components in New York and throughout the United States of America.

22.     Founded in 1933 and headquartered in Yokohama, Japan, Defendant Nissan Motor Co., Ltd. ("NML") is a corporation organized under the laws of Japan. NML manufactures and distributes automobiles and related parts. It also provides financing services. NML delivers a

comprehensive range of products under various brands that are manufactured in Japan, the United States, Mexico, the United Kingdom and many other countries. NML is the parent and owns 100% of NNA.

23.     At all relevant times, Nissan was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in New York and throughout the United States of America.

## JURISDICTION AND VENUE

24.     This is a class action.

25.     Members of the proposed Class are citizens of states different from the home state of Defendants.

26.     On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

27.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

28.     Nissan North America, Inc. (and NML, which is the parent corporation and owns 100% of NNA), through its business of distributing, selling, and leasing the Class Vehicles, and maintaining its national headquarters in the district, has established sufficient contacts in this district such that personal jurisdiction is appropriate. Defendants are deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

29.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Nissan North America, Inc.'s principal place of business is in this judicial district, and because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

30.     Nissan is known throughout the United States as a major manufacturer of automobiles and related products, which are sold under the Nissan brand.

31.     Nissan designed, manufactured, imported, distributed, and/or marketed the Class Vehicles in the United States, including in New York.  Nissan also provides sales, repair and

maintenance services for the Class Vehicles through its nationwide network of authorized dealers and service providers.

32.     On information and belief, the only method Nissan makes available for the purchase of Class Vehicles is through its nationwide network of authorized dealers.

33.     The CVT is an automatic transmission that uses two variable-diameter pulleys with a steel belt running between them to change speed, instead of a gearbox and clutch system. Rather than relying on the fixed gear ratios of the traditional automatic transmission, the pulleys can adjust their width to make the belt turn faster or slower, depending on the speed of the vehicle and the torque needed. The CVT thus "simultaneously adjusts the diameter of the 'drive pulley' that transmits torque from the engine and the 'driven pulley' that transfers torque to the wheels" to allow for an infinite number of gear ratios.[3]  In theory, the CVT chooses the gear ratio optimum for driving conditions.

34.     The CVT, allegedly offering more efficient power delivery and better fuel economy, is standard in the Class Vehicles.

35.     The illustration in figure one, below, depicts the way the CVT's belt and pulley system adjusts the gear ratio to change speed:



*Figure one – Xtronic CVT belt and pulley system*

36.     Consumers complain that their vehicles take an inordinately long time to accelerate

---

[3] Nissan Motor Corporation, *XTRONIC CVT*, http://www.nissan-global.com/EN/TECHNOLOGY/OVERVIEW/cvt.html.

from a stop or low speed, exhibit a hard deceleration or "clunk" when drivers either slow down or accelerate at low speeds, shudder and shake or make a loud clunking or knocking sound when the CVT finally selects the appropriate gear ratio, and completely fail to accelerate. Consumers also frequently complain of unusually high RPMs or a loud whining once they achieve speed and which exceeds their reasonable expectations for noise from the CVT. Finally, in addition to hesitations, slow response, and loud noises, the lifespan of the CVT in the Class Vehicles is unreasonably short.

37.     The CVT Defect alleged is inherent in and the same for all Class Vehicles.

38.     On information and belief, dating back to at least 2013, Nissan was aware of material facts regarding the CVT Defect, but failed to disclose them to consumers. As a result of this failure, Plaintiff and Class Members have been damaged.

### The CVT Defect Poses an Unreasonable Safety Hazard

39.     The CVT Defect poses an unreasonable safety hazard. Hesitations, slow/no responses, hard braking or catastrophic transmission failure impair drivers' control over their vehicles, which significantly increases the risk of accidents. For example, turning   across traffic in a vehicle with delayed and unpredictable acceleration is unsafe. In addition, these conditions can make it difficult to safely change lanes, merge into traffic, turn, brake slowly or accelerate from stop light/sign, and accelerate onto highways or freeways. *See* ¶ 43-65, *infra*.

### A.     Complaints Lodged with NHTSA

40.     Federal law requires automakers like Nissan to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. See TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

41.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their

ongoing obligation to identify potential defects in their vehicles, including safety-related defects.
*Id.* Thus, Nissan knew or should have known of the many complaints about the CVT Defect logged by NHTSA's Office of Defects Investigation ("ODI"), and the content, consistency, and large number of those complaints alerted, or should have alerted, Nissan to the CVT Defect.

42. For years, owners of Nissan Rogue models have publicly complained to the United States government about the CVT Defect in Class Vehicles. The ODI is an office within NHTSA. ODI conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways. All automobile manufacturers routinely monitor and analyze NHTSA complaints because this information is used in determining if a recall should be issued. *See* https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm (last visited March 10, 2021). Indeed, automobile manufacturers are required by law to report any potential safety defects to the United States government.

43. The following complaints made to NHTSA and elsewhere online demonstrate that the defect is widespread and dangerous and that it manifests without warning. The complaints also indicate Nissan's awareness of the problems with the CVT and Defect, including how dangerous they are for drivers. These safety complaints relate to the CVT Defect (spelling and grammar mistakes remain as found in the original) (Safercar.gov, *Search for Safety Issues* (November 2017).

**2014 Nissan Rogue**

44. Below is a sample of complaints, posted on NHTSA's website, describing customers' experiences with the Defect in 2014 Rogue vehicles[4]:

(a) Reported on June 24, 2014:

NHTSA ID Number: 10605731
I DROVE 10 MILES AND SHUT THE CAR OFF FOR AN HOUR THEN GOT BACK IN AND ENTERED THE FREEWAY TO GO HOME. I DROVE A COUPLE MILES AND LOST ACCELERATION. AT 70 MILES AN HOUR ON THE FREEWAY MY CAR WAS ACTIVELY DECELERATING WHILE I WAS PUSHING THE GAS PEDAL. I LET OFF NOT

---
[4] https://www.nhtsa.gov/vehicle/2014/NISSAN/ROGUE/SUV/AWD

KNOWING WHAT WAS HAPPENING AND THE CAR
SEEMED TO ACCELERATE SOME OR COASTED MORE
FREELY. I STEPPED ON THE GAS AND THE CAR SLOWED
DOWN AGAIN. I REPEATED THIS A COUPLE TIMES
BEFORE DECIDING I HAD TO PUT HAZARDS ON AND
PULL OVER. I AM SO GRATEFUL I DIDN'T GET REAR
ENDED AS I HAD SLOWED DOWN RAPIDLY WITH OUT
ANY BREAK LIGHTS TO WARN OTHERS. WHEN I PULLED
OVER AND PUT IT IN PARK THE CHECK ENGINE LIGHT
(MALFUNCTION LIGHT) AND ALSO THE POWER
STEERING LIGHT CAME ON. IT WAS TOWED AND HELD
OVERNIGHT UNTIL IT COULD BE TOWED TO THE
DEALERSHIP (APPARENTLY NOTHING CAN BE DROPPED
OFF WHEN THEY ARE CLOSED). *TR

(b)    Reported on September 29, 2015:

NHTSA ID Number: 10778560
Incident Date September 2, 2015
THE ISSUE PRESENTS ITSELF WHEN THE TEMPERATURE
IS ABOVE 90 DEGREES AND I HAVE BEEN DRIVING THE
CAR FOR AT LEAST 20-30 MINUTES. WHEN THE CAR IS AT
A COMPLETE STOP AND YOU TRANSITION FROM THE
BRAKE TO THE GAS, THE CAR DOES NOT IMMEDIATELY
RESPOND. IT IS AS IF YOU ARE NOT PRESSING THE GAS
PEDAL AT ALL. YOU CAN PRESS IT ALMOST ALL THE WAY
TO THE FLOOR BEFORE THE CAR WILL RESPOND. WHEN
IT STARTS TO OCCUR, IT IS CONSISTENT WITH
OCCURRING EVERY TIME THE CAR COMES TO A STOP.
THERE DOES NOT APPEAR TO BE ANY OTHER ISSUES
WHILE THE CAR IS IN MOTION. THIS IS EXTREMELY
DANGEROUS WHEN YOU ARE MAKING A LEFT OR RIGHT
TURN OR ACCELERATING FROM A STOP LIGHT. I HAVE
ALMOST BEEN REAR ENDED SEVERAL TIMES BECAUSE
THE LIGHT HAS TURNED GREEN AND MY CAR WILL NOT
IMMEDIATELY ACCELERATE. I TOOK THE CAR TO THE
DEALER ON 9/15, ABOUT 2 WEEKS AFTER THIS STARTED.
I WAS INFORMED THAT THIS MIGHT BE DUE TO THE FUEL
PUMP RECALL. THEY REPLACED THE FUEL PUMP AND
DROVE THE CAR WITHOUT EXPERIENCING ANY ISSUES.
AS I WAS DRIVING HOME FROM THE DEALER THAT
AFTERNOON, THE ISSUE PRESENTED ITSELF AGAIN. I
CALLED THE DEALER AND WAS TOLD TO BRING THE
CAR BACK THE FOLLOWING MORNING. THEY KEPT MY

CAR FOR 3 DAYS. THEY WERE ABLE TO REPLICATE THE ISSUE AT THE DEALER WHILE CONNECTED TO A COMPUTER. THEY SPOKE TO NISSAN ENGINEERING AND SENT THEM THE FILES. NISSAN ENGINEERING DIDN'T KNOW THE CAUSE AND SAID TO "DRIVE IT UNTIL IT GETS WORSE". MY CAR WAS ALMOST AT THE END OF THE 36,000 MILE WARRANTY. THEY REPLACED A BRAKE SENSOR TO SEE IF THAT WORKED. I PICKED UP THE CAR AND BROUGHT IT BACK TO THE DEALER THE FOLLOWING WEEK WHEN THE ISSUE PRESENTED ITSELF AGAIN. THEY RECORDED MORE DATA TO SEND TO NISSAN. AGAIN, THEY REQUESTED MORE DATA FROM ME YESTERDAY. WHILE IN THE CAR WITH THE TECHNICIAN RECORDING THE ISSUE, MY CAR WOULD NO LONGER ACCELERATE OVER 20 MPH WHILE REVVING THE ENGINE. THIS CAR IS UNSAFE TO DRIVE.

(c)    Reported on June 2, 2016:

NHTSA ID Number: 10872189
Incident Date May 28, 2016
FOR THE THIRD TIME MY NISSAN ROGUE 2014 FAILED TO ACCELERATE AS THE CVT TRANSMISSION SLIPPED AND WOULD NOT RE ENGAGE. TO MAKE MATTERS WORSE I WAS STUCK ON A MOUNTAIN ON A 95 DEGREE DAY WITH NO CELL PHONE SERVICE. THE VEHICLE HAS 28,000 MILES CURRENTLY. THIS FIRST TIME IS HAPPENED IT HAD 9,000 MILES. THERE IS A LAWSUIT FOR 2013-14 PATHFINDERS BUT THE ROGUES SHOULD BE INCLUDED IN A RECALL FOR VEHICLES UNFIT FOR OPERATION. IT IS A SAFETY HAZARD TO HAVE A VEHICLE TRAVELING AT 70MPH LOSE ACCELERATION CAPABILITIES AND STOP MOVING FORWARD. I WAS ALMOST REAR ENDED AND DROVE OFF OF THE ROAD. I'VE FILED A COMPLAINT WITH THE BBB AS WELL AS THE CORPORATION AND REQUESTED TO BE ABLE TO RETURN THE VEHICLE WITH NO FURTHER COSTS. THIS REQUEST WAS DENIED SO I AM FORCED TO OWN A VEHICLE THAT IS UNSAFE AND THE COMPANY REFUSES TO TAKE RESPONSIBILITY FOR. THERE WERE NO FATALITIES THIS TIME BUT I CAN'T SAY THE SAME FOR MY NEXT DRIVE TO THE STORE. MANY PEOPLE HAVE FILED COMPLAINTS ON THESE MODELS AND NOTHING IS BEING DONE TO ENSURE SAFETY.

CLASS ACTION COMPLAINT

(d)     Reported on July 4, 2016:

NHTSA ID Number: 10882418
Incident Date July 3, 2016
I HAVE ONLY HAD THE ROUGE SELECT FOR BARELY TWO
YEARS. FOUR TIMES I HAVE HAD A POWER LOSS AS I AM
DRIVING UP CANYONS AND ANY STEEP TERRAIN. IF FOR
ANY REASON YOU SLOW DOWN AND RE-ACCELERATE
THE CAR DOES NOT PICK UP SPEED. THERE ARE TIMES
WHEN WE ARE JUST ACCELERATING AND LOOSE
POWER. THE VEHICLE HAS HAD A LOSS OF POWER
BETWEEN 55 AND 70 MILES AN HOUR, HIGHWAY SPEEDS
ARE 50-70+. THIS HAS HAPPENED TO US A FEW TIMES
PUTTING MY FAMILY AND I, IN DANGER OF BEING REAR
ENDED AT HIGHWAY SPEEDS. THE LOSS OF POWER
HAPPENING IN THE VEHICLE, FOUR TIMES IN THE LAST
WEEK AS WE TRAVELED FROM UTAH UP PARLEYS
CANYON, WE HAD A LOSS OF SPEED TWICE IN THIS
CANYON. ONCE AT HALF-WAY IN HEAVY TRAFFIC AND
AGAIN NEAR THE CREST OF THE MOUNTAIN IN VERY
HEAVY TRAFFIC ALMOST BEING REAR-ENDED BY A
SEMI. AGAIN THE VERY SAME DAY TWO MORE TIMES AS
WE PASSED THROUGH HEAVY TRAFFIC IN WYOMING
AND AGAIN AS WE PASSED BACK THROUGH UTAH IN
THE FLAMING GORGE AREA. ALL AREAS WITH STEEP
TERRAIN. THIS IS EXTREMELY UNSAFE AND AS I READ
ALL THESE COMPLAINTS THIS IS A SERIOUS MATTER.
FOR A NEW VEHICLE WITH BARELY 30,000 MILES ON IT,
THIS SHOULD NOT BE HAPPENING AND IS A SERIOUS
DEFECT. THIS IS RIDICULOUS FOR A BRAND NEW
VEHICLE TO HAVE THIS HAPPENING. I JUST HOPE IT
DOESN'T TAKE A LOSS OF LIFE BEFORE THIS IS
RECALLED AND FIXED FOR GOOD.

(e)     Reported on October 24, 2016:


NHTSA ID Number: 10918583
Incident Date October 22, 2016
CAR INCREASES IN RPM BUT DOES NOT ACCELERATE.
ITS AS IF IT IS STUCK IN CRUISE CONTROL AT 20 MPH BUT
YOU ARE ON THE HIGHWAY TRYING TO DO 55. HAS
HAPPENED A FEW TIMES. VERY SCARY AND
DANGEROUS

CLASS ACTION COMPLAINT

(f)    Reported on March 6, 2017:

NHTSA ID Number: 10958972
Incident Date March 5, 2017

….I WAS MAKING A LEFT HAND TURN, WHEN
ACCELERATING MY VEHICLE SEEMED HESITANT AND
MOMENTARILY STALLED WITHING MY TURN. THIS HAS
HAPPENED NUMEROUS TIMES, WHILE TRYING TO
ACCELERATE. MY CAR HAD BEEN WARM DURING EACH
TIME.

MY TRANSMISSION HAS ALREADY STARTED SLIPPING, I
WAS NOTIFIED THERE WAS A RECALL ON MY VEHICLE
FOR THE TRANSMISSION.

MY BACK SEATS SEEM TO VIBRATE. THEY VIBRATE SO
MUCH, THEY MOVE SIDE TO SIDE AT HIGH SPEEDS ON
THE HIGHWAY. (70 MPH) THIS IS THE LEGAL SPEED IN MY
AREA.

I FEEL MY VEHICLE IS A LEMON WITH ALL THE RECALLS
THAT HAVE BEEN FIXED ION IT ALREADY AND IS NOT
SAFE. MY TOTAL MILLAGE IS ABOUT 63000.

(g)    Reported on April 7, 2017:

NHTSA ID Number: 10971058
Incident Date March 31, 2017
WIFE COMING HOME AFTER DROPPING DAUGHTER OFF
FROM SCHOOL, CAR FELT JERKY AND UNSTABLE,
PULLED INTO THE DRIVEWAY AND ENGINE DIED. I THEN
STARTED VEHICLE, SHIFTED INTO REVERSE, VEHICLE
DIED. TRIED AGAIN AND IT STARTED, BUT HAD LOTS OF
HESITATION, TOOK TO DEALERSHIP, THEY HAD IT FOR 3
WORKING DAYS AND COULD NOT DUPLICATE THE
ERROR AND NO ERROR CODE, SO THEY SENT THE
VEHICLE BACK TO US. NEXT DAY WIFE WENT TO PICK
UP DAUGHTER FROM SCHOOL AND WHILE PULLING OUT
OF THE SCHOOL PARKING LOT, CAR DIED AND THEY
WERE ALMOST STRUCK BY ANOTHER VEHICLE WHO
WAS TRAVELING AT HIGHER SPEED. COULD START THE
CAR, BUT COULD NOT SHIFT INTO ANY GEAR WITHOUT
CAR DYING. ONCE AGAIN, NO TROUBLE/ERROR CODES

CLASS ACTION COMPLAINT

WERE BEING FIRED OFF. TOOK CAR TO DEALERSHIP
WHERE AGAIN THEY TRIED FOR 2 DAYS TO GET THE CAR
TO ACT UP, UNTIL FINALLY IT ACTED UP ON THE
FREEWAY WHERE IT ALMOST DIED THERE. THEY
DIAGNOSED THE ISSUE AS A FAULTY TORQUE
CONVERTER, WHICH REQUIRES A FULL TRANSMISSION
REPLACEMENT. THE VEHICLE ONLY IS 3 YEARS OLD,
WITH ONLY 75,000 MILES ON IT. THIS IS A SAFETY ISSUE,
THE CAR CUTS OUT WITH LITTLE WARNING AT LOW
SPEEDS, MEANING ESPECIALLY DANGEROUS WHEN
TRYING TO MAKE TURNS AND ACCELERATE INTO
TRAFFIC. ADDITIONALLY, NO ERROR CODES WERE
THROWN AT ALL, AND TOOK 6 WORKING DAYS AT A
DEALERSHIP TO DETERMINE THE ISSUE.
FURTHERMORE, IT IS SPORADIC AND CANNOT BE
DIAGNOSED EASILY OR QUICKLY, SUGGESTING THAT
THERE IS A HIGH POTENTIAL FOR THIS ISSUE TO OCCUR
WITH OTHER VEHICLES AND THEY WILL BE SENT BACK
OUT ON THE ROAD WITHOUT HAVING THE ISSUE FIX,
PLACING PEOPLE IN SIGNIFICANT DANGER. THIS IS THE
FIRST YEAR OF THE REDESIGN OF THE ROGUE AND ONE
OF THE FIRST SOLD IN TEXAS, BUT THIS IS
UNACCEPTABLE AND EXTREMELY DANGEROUS AS
THERE IS NO WAY TO EASILY DIAGNOSE THE ISSUE AND
HOW THE FAILURE OCCURS. ALL RECOMMENDED
SERVICES WERE PERFORMED AT NISSAN DEALERSHIPS
FOR THE TRANSMISSION AS WELL AT 30K AND 60K.

(h)     Reported on May 16, 2017:

NHTSA ID Number: 10986041
Incident Date May 16, 2017
WHILE UP AND DOWN HILLS, THERE IS A PROBLEM WITH
ACCELERATION. MY RPM'S WILL SHOOT UP VERY HIGH,
BUT CAN NOT ACCELERATE. THIS HAS HAPPENED TO ME
3 TIMES NOW, AND ONE TIME WAS VERY DANGEROUS. I
WAS COMING OFF THE INTERSTATE (DOWNHILL) AND
WENT TO CROSS ONTO THE HIGHWAY, I WAS THEN
ALMOST HIT (WITH MY 2 YEAR OLD IN THE CAR)
BECAUSE MY CAR WOULD NOT ACCELERATE. I MADE IT
ACROSS, TURNED MY CAR OFF THEN ON AND IT SEEMED
FINE AFTER THAT. IN A SITUATION WHERE THERE
WOULD HAVE BEEN PLENTY OF TIME TO CROSS, I WAS
ALMOST HIT. THAT WAS ABOUT 2 MONTHS AGO, BUT

JUST THIS MORNING I WAS GOING UP A VERY SMALL
HILL (INTERSTATE RAMPS ARE STEEPER THAN THE ONE
THIS HAPPENED ON), MY SUV JUST WOULDN'T
ACCELERATE. AGAIN, I HAD TO PULL OVER AND TURN
MY SUV OFF AND THEN BACK ON FOR IT TO WORK
AGAIN.

(i)     Reported on July 10, 2017:

NHTSA ID Number: 11004007
Incident Date August 29, 2015
WHEN DRIVING MY ROGUE FOR ANY PERIOD OF TIME
OVER 40 MINUTES ON THE EXPRESSWAY THE VEHICLES
STARTS TO DECELERATE EVEN WHEN THE GAS PEDAL
TO PUSHED ALL THE WAY DOWN TO THE FLOOR. THIS
SEEMS TO BE WORSE IN THE SUMMER MONTHS WHEN IT
IS WARMER OUTSIDE. THE CAR NEEDS TO BE SHUT OFF
FOR A PERIOD OF TIME BEFORE IT WILL BEGIN TO
ACCELERATE AND MAINTAIN THE SPEED ON THE
EXPRESSWAY. I HAVE EVEN TURNED ON THE CRUISE
CONTROL AND THE VEHICLE WILL EVEN DECELERATE
WHEN THE SPEED IS SET ON CRUISE CONTROL. THIS IS
VERY FRUSTRATING ESPECIALLY SINCE I LIVE IN FL AND
TO HAVE TO PULL OVER EVERY 40 MINUTES WHEN
DRIVING LONGER DISTANCES AND SIT IN YOUR HOT
CAR ON THE SIDE OF THE ROAD. THIS STARTED BACK IN
2015 AND HAPPENS ALMOST EVERY TIME I HAVE TO
DRIVE OVER 40 MINUTES ON THE EXPRESSWAY.

(j)     Reported on July 11, 2017:

NHTSA ID Number: 11004649
Incident Date July 11, 2017
AS SEVERAL HAVE STATED, 50-70 MPH, THE ENGINE
WILL REV, BUT THEN DECELERATE WITH THE PEDAL
ALL THE WAY TO THE FLOOR. THE VEHICLE WILL NOT
ACCELERATE. NOT AT ALL. NEXT THING YOU KNOW,
YOU ARE DOING 25 MPH. VERY DANGEROUS AND
WORRISOME. LET'S HOPE NOTHING EVER HAPPENS TO
ANY MEMBERS OF MY FAMILY WHILE THIS CONDITION
PRESENTS ITSELF. NISSAN NEEDS TO STEP UP AND BE
ACCOUNTABLE. IT HAPPENED AGAIN TODAY WHILE
DRIVING ON THE INTERSTATE. THE TERRAIN WAS A
GRADE GOING UPHILL, TEMPERATURE AROUND 92 IN

TEXAS.

**2015 Nissan Rogue**

45. Below is a sample of complaints, posted on NHTSA's website, describing customers' experiences with the Defect in 2015 Rogue vehicles:[5]

(a) Reported on December 24, 2014:

NHTSA ID Number: 10668154
Incident Date December 6, 2014
TL* THE CONTACT OWNS A 2015 NISSAN ROGUE. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 10 MPH FROM A STOP SIGN, THE ENGINE BEGAN TO REV AND THE VEHICLE FAILED TO ACCELERATE OVER 10 MPH. IN ADDITION, THE VEHICLE STALLED. THE VEHICLE WAS RESTARTED BUT FAILED TO DRIVE OR REVERSE. THE VEHICLE WAS TOWED TO THE DEALER, WHO DIAGNOSED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE VIN WAS UNAVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 500.

(b) Reported on January 13, 2015:

NHTSA ID Number: 10672112
Incident Date January 7, 2015
MY CAR STARTED TO REV TO OVER 4000 RPMS AT 30 MPH IT WAS LIKE IT WAS STOCK IN LOW FOR OVER 3 MILES I HAD TO PULL OVER STOP THE CAR AND TRY IT AGAIN I WAS UNABLE TO GET IT TO RUN NORMAL I TOOK IT RIGHT TO NISSAN SERVICE THEY CHECKED THE CAR OUT TOLD ME NOTHING WAS WRONG WITH IT. THEY ASKED ME IF I HAD IT IN LOW I TOLD HIM THAT A BIG D WAS SHOWING SO IT WAS IN DRIVE AND I WAS TOLD THEY SEE THAT AT ABOUT 40,000 MILES THEY WOULD NOT GIVE AND PAPER WORK FOR THE SERVICE THAT WAS DONE IF ANY. THERE IS PROBLEM WITH THE TRANSMISSION THIS IS THE 2ND TIME IT HAPPENED TO

---

[5] https://www.nhtsa.gov/vehicle/2015/NISSAN/ROGUE/SUV/AWD

CLASS ACTION COMPLAINT

ME BUT IT CLEARED UP AFTER A LITTLE.

(c)     Reported on October 31, 2016:

NHTSA ID Number: 10920174
Incident Date August 15, 2016
TL* THE CONTACT OWNS A 2015 NISSAN ROGUE. AFTER
APPLYING THE BRAKES ABRUPTLY TO AVOID A
COLLISION AND ATTEMPTING TO ACCELERATE, THE
VEHICLE LOST POWER. IN ADDITION, THE
ACCELERATOR PEDAL WAS DEPRESSED, BUT THE
VEHICLE FAILED TO ACCELERATE AND INCREASED IN
RPMS. THE FAILURE RECURRED ON NUMEROUS
OCCASIONS. THE VEHICLE WAS TAKEN TO A DEALER
WHO WAS UNABLE TO DIAGNOSE OR REPAIR THE
VEHICLE. THE MANUFACTURER WAS NOTIFIED OF THE
FAILURE. THE FAILURE MILEAGE WAS 7,000. UPDATED
01/11/2017*CT

(d)     Reported on March 13, 2017:


NHTSA ID Number: 10960317
Incident Date March 10, 2017
WHEN DRIVING THE VEHICLE ON SNOW COVERED
ROADS, IT WILL FIRST SHAKE AND SHUDDER THEN IT
WILL EVENTUALLY STALL. NO WARNING LIGHTS OR
CHECK ENGINE LIGHTS COME ON, ONCE VEHICLE SITS
FOR 10-15 MINUTES WITH THE ENGINE OFF THE VEHICLE
WILL START BUT AFTER A SHORT DISTANCE IF THE ROAD
CONDITIONS REMAIN THE SAME- SNOW COVERED IT
CONTINUES TO STALL.

(e)     Reported on June 20, 2017:

NHTSA ID Number: 11000299
Incident Date June 15, 2017
WHEN THE TEMPERATURE IS OVER 90 DEGREES AND
THE CAR HAS BEEN RUNNING FOR AT LEAST 10 MINUTES
THE CAR HAS ACCELERATION ISSUES. WHEN AT A FULL
STANDSTILL SUCH AS AT A STOPLIGHT THE CAR WILL
NOT ACCELERATE QUICKLY AND RESPOND TO PEDAL
PRESSURE. WHEN THE PEDAL IS FLOORED AND TRYING
TO START AGAIN IT HAS A LONG DELAY LIKE THE

TRANSMISSION IS IN A HIGH GEAR OR IS OVERHEATED. I KNOW THERE HAVE BEEN MANY ISSUES ONLINE ABOUT THE CVT OF THE ROGUE. THIS ONLY SEEMS TO HAPPEN WHEN IT IS HOT OUT. THERE ARE ALSO ISSUES WHEN GOING UP AN INCLINE IN HOT TEMPERATURE THE CAR DOES NOT RESPOND TO PEDAL PRESSURE AND ACCELERATION. THIS IS A SAFETY ISSUE IN THAT WHEN TRYING TO TURN LEFT AT A LIGHT I EXPECT MY CAR TO GO AND NOT STUTTER AND THERE HAVE BEEN MANY CLOSE CALLS TO BEING BROADSIDED.

(f)      Reported on September 6, 2017:

NHTSA ID Number: 11021758

Incident Date September 1, 2017
I PURCHASED THIS VEHICLE, DRIVING ON THE HIGHWAY THE TRANSMISSION BLEW OUT, CAR WOULD NOT ACCELERATE PASS 40 MILES AN HOUR, ONLY HAD THE VEHICLE FOR 7 DAYS!!

(g)      Reported on October 19, 2017:

NHTSA ID Number: 11034587
Incident Date October 19, 2017
WHILE MAKING A TURN THE CAR STALLED AND WOULD NOT ACCELERATE. I PRESSED ON THE GAS AND THE CAR WOULD BARELY MOVE. I WAS ABLE TO GET IT OFF THE ROAD. I THEN PARKED AND TURNED THE VEHICLE OFF. I WAITED A MINUTE OR SO BEFORE STARTING IT. I DID TRY TO PUT THE VEHICLE IN DRIVE AND ATTEMPT TO DRIVE WITH THE SAME ISSUE. I PUT THE CAR IN PARK WHILE LETTING THE ENGINE RUN. WAITED ANOTHER 5 MINUTES AND ATTEMPTED TO DRIVE THE VEHICLE AGAIN. THIS TIME I WAS ABLE TO DRIVE THE VEHICLE, HOWEVER I AM CONCERNED THERE IS AN ISSUE. I NO LONGER FEEL SAFE WHILE DRIVING THIS VEHICLE. THIS HAPPENED IN A MAJOR INTERSECTION

(h)      Reported on November 8, 2017:

NHTSA ID Number: 11044480
Incident Date September 28, 2017
AFTER DRIVING IN CITY TRAFFIC ALL DAY THE ROGUE

WOULD NOT MOVE AS I WAS HEADING HOME FOR THE DAY. I BOUGHT THE ROGUE NEW IN 2015 AND IN OCTOBER 2016 THIS HAPPENED. TOOK TO A DEALERSHIP AND WORK WAS DONE. CAR OK UNTIL:

SEPTEMBER 2017 THE ROGUE WAS SHIFTING LATE AND NOT DOWN SHIFTING GOING DOWNHILL. TOOK IT BACK TO DEALERSHIP. NISSAN SAID JUST TO DRAIN SOME OF THE TRANSMISSION FLUID AND PUT IN NEW TRANSMISSION FLUID.

**2016 Nissan Rogue**

46. Below is a sample of complaints, posted on NHTSA's website, describing customers' experiences with the Defect in 2016 Rogue vehicles:[6]

    (a)    Reported on February 17, 2017:

NHTSA ID Number: 10955290
TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. WHILE DRIVING 20-40 MPH, THE VEHICLE EXPERIENCED MODERATE CONSTANT VIBRATION WITHOUT WARNING. THE DEALER DIAGNOSED THAT THE VEHICLE RAN AS INTENDED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 500....UPDATED 05/17/17 *BF

    (b)    Reported on November 16, 2017:

NHTSA ID Number: 11046878
Incident Date October 15, 2016
EVERYTHING IN THE VEHICLE SHAKES VIOLENTLY. THE SEATS AND THE HOOD MOST NOTICEABLY SHAKE. I'VE STOPPED BEFORE TO CHECK THAT IT WAS LATCHED OUT OF FEAR OF THE HOOD OPENING WHILE I'M DRIVING. THE SHAKING IS NOT AS BAD WHEN THE TIRES ARE ROTATED BUT IT EVENTUALLY RETURNS WITHIN A FEW WEEKS. IT HAS DONE THIS SINCE I PURCHASED IT. THE CAR HAS APPROXIMATELY 23,000 MILES ON IT.

---

[6] https://www.nhtsa.gov/vehicle/2016/NISSAN/ROGUE/SUV/FWD

Case 3:21-cv-00232 Document 1 Filed 03/17/21 Page 19 of 60 PageID #: 19
CLASS ACTION COMPLAINT

(c)     Reported on January 16, 2018:

NHTSA ID Number: 11063166
Incident Date November 2, 2017
AS I WAS TRAVELLING ON A MAJOR FREEWAY, MY
BRAND NEW 2016 NISSAN ROGUE BEGAN TO FEEL LIKE
IT WAS "JUMPING." AT THAT POINT I NOTICED MY RPMS
WERE HIGH FOR THE SPEED I WAS GOING. NOT EVEN 30
SECONDS AFTER, MY CAR COMPLETELY STALLED. I WAS
IN THE FAST LANE OF THE FREEWAY AND BARELY HAD
TIME TO REACT. I ENDED UP STUCK ON THE MEDIAN OF
THE FREEWAY. I ENDED UP HAVING THE CAR TAKEN TO
THE DEALER DOWN THE ROAD. THEY SAID THEY
COULDN'T FIND ANYTHING WRONG WITH IT. I REFUSED
TO DRIVE IT AND BEGAN SEEKING FURTHER HELP
THROUGH NISSAN CONSUMER AFFAIRS. AFTER NEARLY
A MONTH, AN ENGINEER FROM NISSAN TOOK 5 MINUTES
TO LOOK AT IT AND NOTICED THE TRANSMISSION WAS
SLIPPING. THE PREVIOUS WEEK BEFORE THIS MAJOR
INCIDENT, THE CAR IS STALLED A FEW BLOCKS FROM
MY HOME ON A RESIDENTIAL STREET AFTER
ACCELERATING FROM A COMPLETE STOP. THE
DEALERSHIP HAD TOLD ME THERE WAS NOTHING
WRONG WITH IT AND IT WAS SAFE TO DRIVE. NOW HERE
WE ARE 2 MONTHS LATER, AND IT FEELS AS IF THE
TRANSMISSION IS SLIPPING AGAIN.

(d)     Reported on January 19, 2018:

NHTSA ID Number: 11063774
Incident Date September 11, 2017
TL* THE CONTACT LEASED A 2016 NISSAN ROGUE. THE
DRIVER STATED THAT THE TRANSMISSION FAILED TO
FUNCTION PROPERLY. AN INDEPENDENT MECHANIC
DETERMINED THAT THE VEHICLE WAS NOT SAFE TO
DRIVE AND SUGGESTED THAT IT BE SERVICED BY THE
DEALER WHO SOLD THE VEHICLE. THE CONTACT
STATED THAT THE VEHICLE HESITATED AND THE GEARS
WERE DIFFICULT TO SHIFT. THE VEHICLE WAS TAKEN TO
THE DEALER (HILLTOP NISSAN, 258 NJ-10, EAST
HANOVER, NJ 07936, (973) 887-5400) WHERE THE
TRANSMISSION WAS REPLACED TWICE, BUT INDICATED
THAT IT NEEDED TO BE REPLACED A THIRD TIME. THE
DEALER WAS UNCERTAIN IF THEY COULD OFFER A

LOANER VEHICLE UNTIL THE FAILURE WAS REMEDIED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 45,000.

(e)     Reported on March 6, 2018:

NHTSA ID Number: 11076472
Incident Date March 1, 2018
****
ALSO, THE VEHICLE SEEMS TO LOOSE POWER DURING ACCELERATION WHILE IN MOTION.

(f)     Reported on April 14, 2018:

NHTSA ID Number: 11085018
Incident Date April 12, 2018
2016 NISSAN ROGUE 2 YEARS OLD, AND TRANSMISSION SLIPPED ALREADY. I HAVE QUITE A FEW MILES, BUT SPOKE TO MULTIPLE REPAIR MEN WHO HAVE SAID THE ROGUE IS KNOWN FOR THAT AND I BOUGHT A LEMON CAR. WHEN I DRIVE AND PRESS PEDAL THE CAR HAS NO POWER AND RPM KEEPS GOING UP/ DOWN ALSO YOU CAN HEAR A WHINING IN THE CAR .

(g)     Reported on July 11, 2018:

NHTSA ID Number: 11110737
Incident Date June 27, 2018
TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. WHILE ACCELERATING, AN ABNORMAL WINDING NOISE WAS HEARD. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE VEHICLE WAS TAKEN TO THE LOCAL DEALER (CAUSEWAY NISSAN, 435 NJ-72, MANAHAWKIN, NJ 08050) WHERE IT WAS DIAGNOSED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED AND OPENED CASE NUMBER: 32050871. NO FURTHER ASSISTANCE WAS PROVIDED. THE FAILURE MILEAGE WAS 67,000.

(h)     Reported on August 7, 2018:

CLASS ACTION COMPLAINT

NHTSA ID Number: 11118369
Incident Date August 7, 2018
TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. WHILE
DRIVING 65 MPH, THE TRANSMISSION FAILED. UPON
DEPRESSING THE ACCELERATOR PEDAL, A LOUD
DRAGGING NOISE WAS HEARD. THE VEHICLE WAS
TAKEN TO AN INDEPENDENT MECHANIC WHO
DIAGNOSED THAT THE CVT WAS FAULTY. A DEALER AND
THE MANUFACTURER WERE NOT MADE AWARE OF THE
FAILURE. THE VEHICLE WAS NOT REPAIRED. THE
FAILURE MILEAGE WAS APPROXIMATELY 69,000.

(i)     Reported on August 11, 2018:

NHTSA ID Number: 11119320
Incident Date August 2, 2018
MY 2016 NISSAN ROGUE EXPERIENCED AN ABRUPT AND
TOTAL FAILURE OF THE CVT TRANSMISSION. I WAS NOT
ABLE TO ACCELERATE AND THE VEHICLE WOULD
LURCH AND LOSE POWER. THIS ABRUPT FAILURE
MAKES ME FEEL VERY UNSAFE FOR MYSELF AND MY
FAMILY THAT RIDES IN THIS CAR, HAD IT STALLED ON
THE BUSY ST LOUIS MO INTERSTATES WE WOULD HAVE
BEEN HIT AND POSSIBLY KILLED, LUCKILY I WAS ON A
BUSY, BUT LESS TRAVELED ROAD AND I WAS ABLE TO
LIMP THE CAR TO THE DEALERSHIP. MY VEHICLE ONLY
HAS 41,000 MILES ON IT. ONCE I GOT TO THE
DEALERSHIP, I INSISTED THAT THEY RIDE WITH ME SO
THEY KNEW WHAT WAS HAPPENING AND NOT TRY TO
SAY THAT THEY COULDN'T REPLICATE THE ISSUE WHEN
DRIVING IT ALONE. THE SERVICE PROFESSIONAL WAS
VERY UPFRONT AND HONEST WITH ME AND TOLD ME IT
WAS DEFINITELY THE TRANSMISSION AND NISSAN HAS
TONS OF THESE ISSUES WITH THEIR VEHICLES. MY CAR
HAS BEEN IN THE SHOP FOR OVER A WEEK NOW FOR A
TRANSMISSION REBUILD. HOWEVER, NISSAN IS NOT
OFFERING AN EXTENDED WARRANTY OR ANYTHING ON
IT, EVEN THOUGH THEY KNOW THEY ARE FAULTY AND
DANGEROUS, I WILL ONLY HAVE 20,000 MILES LEFT ON
MY WARRANTY ONCE I PICK MY CARE UP FROM THE
DEALERSHIP. NISSAN DOESN'T OFFER LOANER CARS TO
THOSE WITH WARRANTY WORK THAT NEEDS DONE, WE
HAVE TO PAY $35 A DAY DUE TO THEIR FAULTY
VEHICLES, THE LEAST THEY CAN DO IS OFFER LOANER

CLASS ACTION COMPLAINT

VEHICLES FOR WARRANTY WORK! NISSAN NEEDS TO HELD ACCOUNTABLE FOR THEIR LEMON VEHICLES AND BE REQUIRED TO BUY THEM BACK ON THE FIRST TRANSMISSION FAILURE. I NO LONGER FEEL SAFE DRIVING THIS CAR, EVEN WITH THE REBUILT TRANSMISSION AND I DON'T THINK THAT IT SHOULD BE MY RESPONSIBILITY TO TRADE THE CAR IN, ROLL OVER THOUSANDS TO ANOTHER VEHICLE LOAN AND PAY $1500 OR MORE IN TAXES TO LICENSE AND TITLE ANOTHER VEHICLE. NISSAN NEEDS TO TAKE CARE OF THIS AND THEY NEED TO BE FINED FOR THEIR CONTINUED USE OF FAULTY TRANSMISSIONS AND MADE TO BUY BACK FAULTY AND DANGEROUS VEHICLES.

(j)     Reported on November 19, 2018:

NHTSA ID Number: 11152378
Incident Date November 10, 2018
TRANSMISSION FAILURE AT 69450 MILE SOLENOID COMPARTMENT B INSIDE TRANSMISSION DEALER SAYS TRANSMISSION NEEDS REPLACING CAR OUTSIDE OF WARRANTEE FOR POWERTRAIN OF 60000 MILES. CAR TRANSMISSION STARTED SLIPPING WHILE ON HIGHWAY IN CRUISE CONTROL RPM REVIVING HIGH WITHOUT PRESSING THE ACCELARATOR EVENTUALLY STOPPED HAD TO TOW TO DEALER.

**2017 Nissan Rogue**

47.     Below is a sample of complaints, posted on NHTSA's website, describing customers' experiences with the Defect in 2017 Rogue vehicles:[7]

(a)     November 12, 2017:

NHTSA ID Number: 11045414
Incident Date August 31, 2017
THE VEHICLE STARTED SHAKING/VIBRATING HEAVILY WHEN SITTING IN TRAFFIC ON A BUSY HIGHWAY JUST THREE WEEKS AFTER PURCHASE WITH THE CHECK ENGINE LIGHT GOING ON THE SAME DAY. IT CONTINUE TO HAVE THUMP/SHAKE/VIBRATION WHEN IDLING

---

[7] https://www.nhtsa.gov/vehicle/2017/NISSAN/ROGUE/SUV/FWD

(PARKED OR STOP LIGHT) AND GOING AT REDUCED SPEEDS (ROLLING OFF THE GAS PEDAL WHEN PARKING OR IN HEAVY TRAFFIC) AFTER MULTIPLE VISITS TO THE DEALERSHIP. THE VIBRATION SEEMS TO BE ASSOCIATED WITH A CONTINUOUS SUDDEN DIP IN THE RPM AS IT DIPS AND GOES BACK TO TO WHERE IT WAS. THE DEALERSHIP HAS ADJUSTED THE RPM SETTINGS MULTIPLE TIMES AND THE ISSUE SHIFTS FROM VIBRATION TO THUMPING BUT DOES NOT DISAPPEAR, CLEARLY NOT RESOLVING THE ROOT CAUSE. CURRENTLY, I'VE OWNED THE VEHICLE FOR 3 MONTHS AND BELIEVE THERE WILL BE A RECALL FOR SOMETHING IN THE NEAR FUTURE AS A NEW CAR SHOULD NOT HAVE THESE SORT OF ISSUES OUT OF THE GATE.
****

(b)     Reported on January 26, 2018:

NHTSA ID Number: 11065221
Incident Date January 2, 2018
VEHICLE RANDOMLY ACCELERATES WEIRD. WHEN TRYING TO ACCELERATE FROM A STOP SIGN OR TRAFFIC LIGHT, IT GOES TO 20 MPH AND HESITATES WITH GAS PEDAL PUSHED. THE RPMS REV UP TO 4,000-5,000 RPM, BUT THE CAR DOES NOT ACCELERATE BEYOND 20 MPH. AFTER ABOUT 10-15 SECONDS, VEHICLE WILL ACCELERATE TO NORMAL SPEED. THIS CAUSES ME TO SIT IDLE AT TIMES FEARING FOR MY SAFETY. NISSAN SERVICE CANNOT GET ANY FAULT CODES TO TRIP OR FIGURE OUT WHAT THE PROBLEM IS. THE SERVICE MANAGER SAYS IT IS MY SPOUSE AND I'S DRIVING HABITS; HOWEVER, THE GENERAL MANAGER AT THE DEALERSHIP SAYS IT IS THE TRANSMISSION. NISSAN REFUSES TO DO ANYTHING FURTHER WITH THIS AND MY SAFETY IS AT RISK BASED ON THE UNKNOWN TIMING OF THIS EVENT. DOES NOT HAPPEN AT A CERTAIN TIME OF DAY EXCEPT RANDOMLY. NISSAN IS AWARE OF ALL OF THE DATES/TIMES/LOCATIONS IT HAS HAPPENED SINCE JANUARY 1, 2018.

(c)     Reported on February 9, 2018:

NHTSA ID Number: 11071871

CLASS ACTION COMPLAINT

Incident Date January 4, 2018
WHEN DRIVING BETWEEN 25-40 MIKE PER HOUR THE
VEHICLE SOUNDS LOUD AS IF THE TRANSMISSION WAS
STUCK IN THIRD GEAR. THIS IS WHEN DRIVING ON THE
STREET OR HIGHWAY ONCE YOU PASS 45 MILES I
CATCHES GEAR AND STOPS.

(d)     Reported on May 23, 2018:

NHTSA ID Number: 11097621
Incident Date April 29, 2018
TL* THE CONTACT OWNS A 2017 NISSAN ROGUE. WHILE
DRIVING 40 MPH, THE VEHICLE STALLED WITHOUT
WARNING.      THE      CONTACT      DEPRESSED      THE
ACCELERATOR    PEDAL    SEVERAL    TIMES    AND    THE
VEHICLE BEGAN TO DRIVE NORMALLY. THE VEHICLE
WAS TAKEN TO THE DEALER (ADVANTAGE NISSAN, 939
OLD COUNTRY RD, WESTBURY, NY 11590) WHERE THE
CAUSE OF THE FAILURE WAS NOT DETERMINED. IN THE
INTERIM,    THE    DEALER    OFFERED    THE    CONTACT    A
LOANER  VEHICLE  FOR  AN  UNSPECIFIED  PERIOD  OF
TIME.    THE    MANUFACTURER    WAS    NOTIFIED.    THE
VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE
WAS 5,000. *TT

THE CONSUMER STATED THE VEHICLE WAS BOUGHT
BACK BY THE MANUFACTURER AS A LEMON. *JS

**2018 Nissan Rogue**

48.     Below is a sample of complaints, posted on NHTSA's website, describing

customers' experiences with the Defect in 2018 Rogue vehicles:[8]

(a)     Reported on April 5, 2019:

NHTSA ID Number: 11193989
Incident Date March 27, 2019
TL* THE CONTACT OWNS A 2018 NISSAN ROGUE. WHILE
DRIVING 35 MPH, THE COLLISION WARNING SENSOR
ACTIVATED AND AN ABNORMAL POPPING SOUND WAS
HEARD    FROM    THE    TRANSMISSION.    ADDITIONALLY,
THERE    WAS    A    GRINDING,    METAL-ON-METAL    SOUND

---

[8] https://www.nhtsa.gov/vehicle/2018/NISSAN/ROGUE/SUV/FWD

Case 3:21-cv-00232   Document 1   Filed 03/17/21   Page 25 of 60 PageID #: 25
CLASS ACTION COMPLAINT

COMING FROM THE TRANSMISSION. THE VEHICLE WAS TAKEN TO TAYLOR'S AUTO MAX (LOCATED AT 4100 10TH AVE S, GREAT FALLS, MT 59405, (406) 727-0340) TO BE DIAGNOSED AND THE CONTACT WAS INFORMED THAT THE TRANSMISSION OPERATED AS INTENDED. THE DEALER ADJUSTED THE COLLISION WARNING SENSORS. THE MANUFACTURER WAS CONTACTED AND OFFERED TO BUY BACK THE VEHICLE. THE OFFER WAS RESCINDED AFTER THE BETTER BUSINESS BUREAU WAS CONTACTED. THE APPROXIMATE FAILURE MILEAGE WAS 1,945. *TR

(b)     Reported on October 24, 2018:

NHTSA ID Number: 11142386
Incident Date October 24, 2018
WHILE DRIVING ON A STAIGHT ROADWAY THE VEHICLE STARTED TO SHAKE AND AN ALARM SOUNDED AND A RED BOX WITH A YELLOW TRIANGLE APPEARED ON THE DISPLAY AND THE CAR BEGAN TO SLOW DOWN AS IF TO AVOID A CRASH OR SOMETHING IN THE ROADWAY. THERE WAS NOTHING IN THE ROADWAY, NO CARS, NO DEER, NO PEOPLE. LUCKILY THERE WAS NO ONE BEHIND ME EITHER. I WAS SHOCKED THAT HIS HAPPENED UNTIL I READ THAT THIS IS HAPPENING WITH A LOT OF ROGUE'S FROM 2018 MODEL YEAR. CONTACTED NISSAN AND WAS TOLD TO CALL THE DEARLERSHIP. DEALERSHIP SAID TO BRING IT IN FOR AN INSPECTION. THE INCIDENT LASTED ABOUT 20 SECONDS AND THEN THE CAR RESUMED NORMAL FUNCTION.

(c)     Reported on May 7, 2019:

NHTSA ID Number: 11205940
Incident Date April 30, 2019
TWICE WHILE DRIVING AT 35 MPH THE CAR ATTEMPTED TO SHIFT GEARS BUT INSTEAD STALLED IN BETWEEN GEARS, CAUSING THE CAR TO SLOW DOWN ALMOST TO A STOP. GAS PEDAL WOULD NOT WORK. HAD TO PULL OVER TO KEEP FROM BEING HIT BY TRAFFIC. I READ ABOUT THIS HAPPENING WITH OTHER YEAR ROGUES WITH CVT TRANSMISSION. THERE NEEDS TO BE A RECALL AND REPAIR. DEALER WANTS TO CHARGE $125 FOR A DIAGNOSIS. MY CAR HAS LESS THAN 40K MILES. I

HAVE OWNED IT FOR 2 MONTHS.

(d)　　Reported on July 18, 2019:

NHTSA ID Number: 11233128
Incident Date July 18, 2019
TRANSMISSION WENT OUT AT 46,000 MILES WHILE AT A
STOP LIGHT

(e)　　Reported on July 22, 2019:

NHTSA ID Number: 11233881
Incident Date October 1, 2018
1. WHEN I STOP THE CAR IN FRONT OF A RED TRAFFIC
LIGHT SIGNAL OR GET STUCK IN TRAFFIC AND THE
LEVER IN POSITION "D" MY BACK FEELS VIBRATION. I
SEE THE PASSENGER SEAT SWINGING. I PUT MY HAND
ON THE HEADREST AND FEEL THE VIBRATION.

2. WHEN I KEEP THE SPEED OF 30 ... 35 MPH I FEEL THE
VIBRATION ON THE STEERING WHEEL, I HEAR THE HUM
FROM THE TRANSMISSION, THE REAR-VIEW MIRROR
HAS AN OSCILLATION.

3. WHEN I DRIVE A CAR ON THE ROAD, THE WHEEL
CROSSES A PIT OR KNOB, THE RIGHT REAR SEAT SHAKES
NOISILY.

4. WHEN I DRIVE CAR 65 MPH AND PUSH BRAKE PEDAL
GENTLY I FEEL PULSE BEATING ON STEERING WHEEL,
BODY, SEATS.

****

(f)　　Reported on December 16, 2019:

NHTSA ID Number: 11289396
Incident Date May 8, 2019
BOUGHT A NEW 2018 ROGUE SV ON 5/8/19 & HAVE HAD
CONTINUOUS & UNFIXED PROBLEMS WITH IT. WITH 165
MILES ON THE CAR, I TOOK THIS ROGUE TO THE LEBRUN
DEALERSHIP IN AUBURN, NY TO CORRECT 2 PROBLEMS:
1 WAS THE "REPEATED AND VERY NOTICEABLE
VIBRATIONS IN THE STEERING WHEEL & BODY OF THE

CAR." AND OTHER ELECTRICAL PROBLEMS.

BROUGHT THE ROGUE BACK TO LEBRUN 5 MORE TIMES TO GET THESE NOTICEABLE VIBRATIONS CORRECTED. BOTH THE OWNER & NISSAN FACTORY REP.DROVE THE CAR AND BOTH AGREED THAT I HAD VIBRATIONS IN THE STEERING WHEEL, ETC.

WHY? THEIR ANSWERS WERE: "IT HAS SOMETHING TO DO WITH THE TRANSMISSION."

IF NISSAN KNOWS WHAT THE PROBLEM IS, WHY ARE THEY CONTINUING TO SELL THESE CARS WITH A KNOWN ENGINEERING DESIGNED-IN DEFECT?

I ASKED FOR MY MONEY BACK BUT LEBRUN WON'T BECAUSE HE DIDN'T BUILD THE CAR. AND NISSAN? THEY TOO REFUSED & HONOR THEIR WARRANTIES AND PROMISES.

I FIND THAT THE DEALERSHIP OWNER, NISSAN & THE FACTORY REP. TO BE CORRUPT AND UNETHICAL IN REFUSING TO LIVE UP TO THEIR PUBLISHED WARRANTIES AND PROMISES.

THE FACT THAT NISSAN & LEBRUN HAVE KNOWN ABOUT THESE SEVERE VIBRATION PROBLEMS FOR YEARS & THE FACTORY REP. HAD "DETERMINED MY VEHICLE WAS OPERATING AS DESIGNED" IS UNTRUE. NISSAN HAS REFUSED TO FIX THIS ENGINEERING DESIGNED-IN FLAW IS TRULY UNACCEPTABLE & BORDERS ON THE CRIMINAL, ESPECIALLY FOR THE FACT THAT THEY'RE STILL THERE IN THE 2019 AND 2020 ROGUE MODELS. I DROVE A 2020 ROGUE WITH THE OWNER AND THE VIBRATIONS ARE STILL THERE. . . .

(g)     Reported on January 14, 2020:

NHTSA ID Number: 11299173
Incident Date January 1, 2020
TRANSMISSION CONSTANTLY JERKS. IT IS CONSTANTLY FEELING LIKE IT IS FIGHTING ITSELF GOING DOWN THE ROAD. MECHANICS HAVE TEST DRIVEN IT AND CAN'T FEEL IT SOMETIMES OR CAN'T DIAGNOSE THE

PROBLEM. BEEN THIS WAY SINCE I PURCHASES THE CAR. I BOUGHT IT WITH 42 MILES ON THE ODOMETER.

**2019 Nissan Rogue**

49.     Below is a sample of complaints, posted on NHTSA's website, describing customers' experiences with the Defect in 2019 Rogue vehicles:[9]

(a)     Reported on September 26, 2019:

NHTSA ID Number: 11258440
Incident Date September 20, 2019
I PURCHASED A NISSAN ROGUE SV AWD ON JULY 17,2019. WHILE DRIVING BETWEEN 10-20 MPH I NOTICED THE CAR WOULD SPORADICALLY DECIDE NOT TO ACCELERATE AT ALL . I WOULD FLOOR THE GAS AND THE RPM GAUGE WOULD NOT REGISTER NOR WOULD THE CAR ACCELERATE . THIS ALSO OCCURRED WHILE COASTING THROUGH EZ PASS TOLLS ON THE GARDEN STATE PARKWAY! IMAGINE BEING IN THE LEFT OR MIDDLE LANE AND UNABLE TO ACCELERATE ON HIGHWAYS FROM 20 MPH ! IT ALSO OCCURRED WHILE PULLING ONTO HIGHWAYS AND DRIVING ROUNDABOUTS . NO LIGHTS ON DASHBOARD INDICATE WHAT WAS GOING ON . I CALLED NISSAN ON SEPTEMBER 20,2019 AND TOOK THE EARLIEST APPT SEPTEMBER 23,2019. I WAS FIRST TOLD THAT AFTER THEY DRIVE MY CAR TEN MILES THEY COULDN'T REPLICATE WHAT OCCURRED SO I COULD TAKE IT HOME . I REFUSED AND SAID THAT WAS UNACCEPTABLE AS THE CAR WAS DANGEROUS. I TOLD THEM TO KEEP IT AND FIND OUT WHAT WAS WRONG. THEY CALLED LATE THAT AFTERNOON AND SAID THEY FOUND I NEEDED A STOP LAMP SWITCH . I WAS TOLD THAT THE CAR "THOUGHT" I WAS BRAKING AND WOULD NOT LET ME ACCELERATE. I SAID THAT'S DANGEROUS AND OUTRAGEOUS! THEY SAID THE LAME SWITCH HAD INTERMITTENT INTERNAL FAILURE . WHEN I ASKED ( AFTER RESEARCHING IT) THAT THECAR MIGHT NEED TO BE REPROGRAMMED? THEY SAID NO . MY CAR IS BRAND NEW AND UNDER WARRANTY. THIS SITUATION SHOULD NEVER OCCUR IT CAN CAUSE SERIOUS INJURIES TO ALL

---

[9] https://www.nhtsa.gov/vehicle/2019/NISSAN/ROGUE/SUV/FWD

. PLEASE ISSUE A RECALL REGARDING THIS ! THE CAR WAS GIVENBACK TO ME ON SEPTEMBER 25.2019. I'M WORRIED ABOUT MY SAFETY WHILE DRIVING IT .

(b)     Reported on March 8, 2020:

NHTSA ID Number: 11316869
Incident Date June 19, 2019
MY CAR'S TRANSMISSION ON MY 2019 NISSAN ROGUE SV AWD HAS BEEN SLIPPING FROM THE MOMENT I RECEIVED IT IN LATE MAY, 2019. ON 6/19/2019, I BROUGHT MY CAR TO THE DEALERSHIP TO REPORT THE PROBLEM. SINCE THEN I'VE BROUGHT IN MY CAR FOR REPAIRS ON 10/15/19, 10/18/19, 1/30/20, 2/15/20, 2/20/20, AND 3/7/20. TO NO AVAIL BECAUSE I'VE BEEN REPEATEDLY TOLD THAT THE "CODES" ARE NORMAL. ON 1/30/20, THE TRANSMISSION CONTROL BOX WAS REPLACED BUT MY CAR CONTINUES TO HAVE TROUBLE ACCELERATING, SPECIFICALLY IT REVS HIGH, BUT DOES NOT RESPOND/ACCELERATE AS EXPECTED. THIS SITUATION CONTINUES TO ENDANGER ME AND OTHERS ON THE ROAD. TO DATE, MY CAR ONLY HAS 8K MILES.

**B.     Customer Complaints on Third-Party Websites**

50.     Consumers similarly complained about the defect on various online forums.

**2014 Rogue**

51.     Owners of 2014 Rogue vehicles posted on CarComplaints.com under the subheading "Transmission Failed" as follows:

(a)     On January 20, 2016:

Our 2014 Nissan Rogue has 25000 miles. We bought it two years ago. The transmission failed and was replaced with a new one. I literally drove the car directly to the dealership and it died on the spot. It kept shaking and sputtering. They then said the struts were bad. How is that possible on a new car? The struts were then replaced and we still had shaking. The steering wheel became tighter and the front alignment went out of whack. We took it back, at which time, they said there was a recall on the fuel pump. So they replaced that. Now I have to take the car back again because it still has a strong vibration. Should this be happening to a new car with 25,000 miles on it? The dealership does not care and just says

bring it back. The mechanics are trying but keep saying "no codes" even though you can feel the car is not right. I am only asking to have the car that I originally paid $26, 000 dollars for....is that too much to ask? Is Nissan just pumping out cars with no regard for the consumer. I should have bought a Ford!!

(b)     On February 15, 2017, another poster wrote:

CVT tranny by Nissan are crap. Just died with just over 40K, Apparently its a common problem. I would never buy a used one.

(c)     On August 1, 2017, another poster wrote:

Took the dealership over a month to repair, the car stopped shifting and would all of a sudden lunge forward. I was coming back from upstate with kids in the car. This could have turned out VERY badly. The car was brought to the dealership prior for a clunky trans, they said there was no issue - until there was NO Trans.

52.     Owners of 2014 Rogue vehicles on CarComplaints.com under the subheading "ENGINE REVVED TO 5 THOUSAND RPM" posted as follows:

(a)     On March 12, 2014:

@ highway speeds the motor will rev to five or six thousand rpm. At like quarter throttle or so you need to keep playing with the throttle and finally she'll come down to a normal rpm.

(b)     On July 27, 2015, another poster wrote:

This car has revved up to 5 RPM or higher on its own while driving on the freeway. Had to put it in Neutral and back to drive. Several times since 07/2015. Now the car has slipped gears several times and recently had an accident when the car was in drive and actually went backwards.

(c)     On April 2, 2017, another poster wrote:

I noticed the accelerator was a little bit stuck during traffic. When I took the highway the transmission didn't switch (like driving gear 1) and acceleration went to 4. Pulled out, switched gears, it didn't fix the problem. Pulled out again, turned off car, waited a few minutes and then it worked. I was in Boston in a Sunday evening

with no mechanic or near gas station in the highway with a 3 hours trip ahead. Pretty scary.

53. Owners of 2014 Rogue vehicles posted on CarComplaints.com under the subheading "MOST ANNOYING SHAKE WHEN PUT IN DRIVE" as follows:

54. On January 1, 2015:

When driving at slow rpm engine make loud sound and vibration. It's my second Rogue and both disappoint me. Never buy Nissan. I had 2012 Rogue and now I have 2014 Rogue. Wanted to give a second chance to Nissan. I will never buy Nissan and I tell all my friends and family not to buy.

55. On May 13, 2014 another poster wrote:

Whenever the car is put into any gear it has this annoying shake, anything in the cup holders will vibrate.

**2015 Rogue**

56. Owners of 2015 Rogue vehicles posted on CarComplaints.com under the subheading "CVT TRANSMISSION FAILURE" as follows:

(a)     On May 9, 2019:

I bought a 2015 Nissan Rogue in March 2015. At 33,000 miles I was required to replace the CVT transmission - under warranty. Today 3 years down the road with 108,100 miles on it, I'm required to do the same! Not under warranty - costing me $4200 to replace in Massachusetts? One question : WTF?

(b)     On April 18, 2020, another poster wrote:

CVT Failed in the middle of the road with no warning - with children in the car

57. Owners of 2015 Rogue vehicles posted on CarComplaints.com under the subheading "'STUTTERS' WHILE SHIFTING" as follows:

(a)     On August 13, 2015:

CLASS ACTION COMPLAINT

08/14/2015 starting yesterday when ever I take off from a complete stop before it switches to 2nd gear my vehicle starts "stuttering" like it is going to die before it switches gears. I do have the new CVT but it has never done this before. This car is not even a year old, hoping to get this resolved.

    (b)    On June 15, 2016, another poster wrote:

i called the dealership and they said it's common, that it occurs when it gets hot. Not to worry and that I could bring it in, but it would cost $135 to even diagnose. I shouldn't have listened. This was the first new car I have ever bought. I put my trust in this company and now I'm feeling this trust was misplaced and betrayed by the company.

    (c)    On April 17, 2020, another poster wrote:

Stuttered while driving normally, I am very careful in my driving however this problem was very apparent to other passengers and I ended up having to pull over because of how violent it was jolting

58.    Owners of 2015 Rogue vehicles posted on CarComplaints.com under the subheading "VIBRATIONS" as follows:

    (a)    On January 1, 2015:

The transmission stutters / vibrates at low RPM. Sometimes, when accelerating from a stop, the engine feels like it would sputter and die -- luckily that hasn't happen yet but it certainly feels that way.

59.    Very annoying. I expected more from a modern CVT.

    (a)    On July 15, 2015, another poster wrote:

Dealer did not believe the car issues with my first complaint. I had to make videos in order for them to believe me. They made me come back with videos and they finally decided to test it. They found the problem and they replaced the transmission. I don't know if it was new or used. The job was done with only 7500 miles. The car still has issues when goes up hills. It's not strong enough anymore. It feels like I have an old car. It makes rattling noises when goes up hill and you can feel when it changes gears.

**2016 Rogue**

60.     Owners of 2016 Rogue vehicles posted on CarComplaints.com under the subheading "TRANSMISSION FAILURE" as follows:

61.     On December 11, 2019:

> I have this car since it was new but one day just after 90000km the transmission started acting up. The car was driving in higher rpm and started shaking like crazy. Took to dealership they told the transmission was bad and needed to be replaced. My car was still under power train warranty so it's was completely free. It took them like 4 days to replace the transmission.

62.     On April 25, 2019:

> Wife drove vehicle to doctors appointment, upon return had a hard jolt and seen rpms raise. When I came home she told me about it. I drove the vehicle to store (7 miles one way). One hard jolt when going up a hill at 50 mph and seen rpms go from 2100 to 3500. Continued on with no problem. When returning home on same hill, hard jolt, rpm raised again. Kept accelerator in same position, rpms came down. It started pulling hill, once again hard jolt rpms raised and check engine light came on. Continued to home.
>
> Upon arrival at home, put a generic code reader on vehicle. PO841. Looked up code. Many possible issues for code referenced to take to dealer. Towed vehicle to dealer, dropped off, by 11:00 a,m, as requested by dealership. Diagnosed as transmission failure, need rebuild. Covered under 60,000 mile warranty.
>
> One week and 1 day later pick vehicle up. Asked about warranty on rebuilt trans. Told 12 months 12,000 miles whichever comes first. Also told manufacturer warranty was longer by 200 miles (60,000). At this point have very little confidence in a vehicle which fails under 100,000 miles, whether engine, trans. or suspension especially with the cost of purchase. May have to look back into gear/fluid transmission as well as something that has higher vehicle manufacturer warranty which tells me they have better confidence in their product.
>
> When leaving dealership noticed a sign recommending trans. service at 30,000 miles-Manufacturer service manual recommends trans. service at 60,000. Could it be dealerships are aware of failure

prior to 60,000 therefore recommend at 30,000? Having a hard time grasping concept of this failure since I am very on top of the maint. on my vehicles since I am a mechanic. Leaves me with a bad taste for newer vehicles.

63.     Owners of 2016 Rogue vehicles posted on CarComplaints.com under the subheading "TRANSMISSION SLIPS" as follows:

(a)     On June 11, 2016:

OK SO I PURCHASED A NISSAN ROGUE 2016 AFTER TEST DRIVING IT FOR ABOUT 1 WEEK AND LOVED IT! WHEN I FIRST DROVE IT OFF THE DEALER. I LOVED IT AND IT WAS VERY VERY SMOOTH! ROUGHLY AFTER ABOUT 4K MILES OR SO I REALIZED THAT IT STARTED TO HAVE A TRANSMISSION SLIP OR IT WOULD LAG IT TO PICK UP SPEED! MY CAR NOW HAS 32K MILES AND DURING ALL THAT TIME I HAVE TAKEN IT TO THE DEALER ABOUT 7 TIMES. ON THE 6TH TIME THEY BROUGHT THE REPRESENTATIVE OF NISSAN CALIFORNIA TO TEST DRIVE THE CAR. HE MENTIONED TO ME THAT HE HAS BEEN WORKING WITH NISSAN FOR ABOUT 20 YEARS. WELL BASICALLY HE GAVE ME SO MUCH BULLSHIT ABOUT THE CAR NOT HAVING ANY GEARS AND THAT ITS MEANT TO DO THAT OR WHATEVER! ALL 7 TIMES THEY TOLD ME THE SAME THING! I THINK THEY SEE ME AS A 26 YEAR OLD THAT DOESN'T KNOW ANYTHING ABOUT CARS OR THEY THINK I WILL SAY "OKAY" TO EVERYTHING THEY TELL ME! WRONG!!!! I SPOKE WITH CONSUMER AFFAIRS(WHICH THEY COMPLETELY SUCK) AND TOLD THEM MY SITUATION. THEY TOLD UNFORTUNATELY THEY WILL NOT REPURCHASE THE CAR FOR ME BECAUSE EVERYTHING IS "NORMAL". I TOLD THEM "LOOK I HAVE A WIFE AND A DAUGHTER, IF ANYTHING HAPPENS TO THEM BECAUSE OF THE TRANSMISSION SLIP AND LACK OF POWER I WILL BE COMING AFTER YOU GUYS" THE AGENT TOLD ME "YOU ARE FREE TO DO WHATEVER YOU WANT SIR". SO I GOT A LEMON LAW ATTORNEY AND TOLD THEM THE SITUATION AND THEY TOOK MY CASE! I SENT THEM EVERYTHING THEY NEEDED INCLUDING VIDEOS OF THE RPM'S AND SPEEDOMETER. THIS WAS BACK IN JULY AND NOW NOVEMBER THEY GAVE ME THE GREAT NEWS THAT NISSAN WILL BE REPURCHASING THE CAR FROM

CLASS ACTION COMPLAINT

ME. NEVER GIVE UP ON SOMETHING THAT COST A LOT OF MONEY, MY PAYMENTS ARE $500 A MONTH!!!! PLEASE, I HIGHLY ENCOURAGE PEOPLE TO SEEK LEGAL HELP AFTER 4 ATTEMPTS OF TAKING YOUR VEHICLE TO THE DEALER AND THEY DON'T DO ANYTHING! NISSAN IS BY FAR THE WORST CAR MANUFACTURER!

(b)     On December 8, 2016, another poster wrote:

New car, 3,500 miles. Left Michigan to drive to Phoenix. In Texas, had problem with the car not accelerating properly. Gas pedal floored, Rpm raising, going slower by the foot. Would not accelerate up hill. Transmission started slipping. Stopped at a hotel. Next day the car was fine until I hit mountains again. Same problem, didn't want to head down the mountains at night in a car I didn't trust. Stopped for the night. Next day, problem was even worse going up the mountains. Got to Phoenix, Nissan dealer on Monday the 12th. They gave us a loaner, all day didn't find a problem. They kept it overnight. No problem found. Really?

Thank God I found this site! Same problem in previous years, transmission overheating. This car now has 5,600 miles on it! . . .

(c)     On July 24, 2017, another poster wrote:

I Brought a brand new car from Nissan. The first time was January I got a Green 2016 Rogue. It kept having problems, they put me in a Blue rogue in March 2016. This one had a few problems,. Last week I was almost killed, the transmission just stopped in the middle of the highway I 95 N, I also had a passenger with me. We were traumatized. I took the car to Nissan. The mechanic says its the transmission, and told his coworker this is the 3rd on that transmission was gone in a new car. I want out of this Lease. I haven't drove the car since its at Nissan. They called me and said it was fixed. I advised them They sold me a lemon. I do not want that car, It is very dangerous and I don't feel safe with it. . . .

64.     Owners of 2016 Rogue vehicles posted on CarComplaints.com under the subheading "VIBRATIONS" as follows:

(a)     On June 10, 2016:

After trying to fix vibration in transmission the car now vibrates

when stopped in traffic. Take it out of D to N and it stops. Has to be part of the CVT transmission

(b)     The same poster updated on February 28, 2017:

A lot of people are having this same problem. Keep taking your Rogue back, keep all your records and call Nissan International. After about 6 months they bought my Rogue back. I got every penny back I had in it. My trade in all 6 months of payments. KEEP COMPLAINING AND KEEP YOUR ALL RECORDS.

(c)     On November 7, 2016, another poster wrote:

I feel like Nissan is not taking this as serious as they should. It's a bad vibration. I drove another one and it did vibrate also.

(d)     On December 30, 2016, another poster wrote:

Purchased 2016 Rogue SV with 82 miles. That evening noticed significant vibration in steering wheel and gas pedal. Returned to dealer and spoke with service manager. He indicated it as normal for this vehicle. When I stated that was not acceptable he said there was nothing he could do. The Sales manager and Dealership owner refused to do anything stating it is a manufacturing problem and to contact Nissan Corporate. I asked if they had any other complaints about the vibration which the vehemently denied. Really?!

I did file complaint with Nissan and they took down all the information. I was told someone would get back to me before the end of the following business day. Never heard called several times, left messages, On the 4th call I finally reached someone only to be told Nissan has not indicated this as an issue and normal operation for the Rogue. I went to an independent mechanic. After driving he identified there was significant vibration when accelerating between 20 to 40 MPH and said he believed it was a CVT issue and not aware of a solution. He told me he would never tolerate this in a brand new car and would never own one.

I can't believe I will be paying for this car for a number of years. I would trade it in now but already checked and I'd would lose an outrageous amount of money. It has less than 200 miles. Last time I purchase Nissan. I Have owned a number of new and used cars in all price ranges, NEVER drove one so inadequate.

Case 3:21-cv-00232   Document 1   Filed 03/17/21   Page 37 of 60 PageID #: 37
CLASS ACTION COMPLAINT

**2017 Rogue**

    65.    Owners of 2017 Rogue vehicles posed on CarComplaints.com as follows:

    (a)    On January 17, 2017:

This car has Grinding-Vibration in steering wheel, floor boards and front seats. I cannot stand to ride in car. I've had it back 3 times to 2 different dealers Both said if a V-6 motor was in front of the CVT transmission there would be no problem Nissan knows this but know one advised me when purchasing my Rogue . I contacted NissanConsumerAffairs . No Help they say Rogue is Functioning as Designed. It's nothing but a Liars Club , one lie to cover the other but guys in shop tell you whats real about CVT trans, no good behind 4-cylinder cars . I've had since 1/14/17 got 1,568 on a car you can ride in. Buyer Beware! Mine rides worse each day . The car is Junk to me. I'm 64 and with a car I can't stand to drive or ride in. Me and wife are 'sickened' by Nissan's response. So come ride with me and see before you buy. I'll save you a lot of Grief !!!!!!!!!!!

    (b)    The same poster wrote an update on May 5, 2017:

Nissan changed motor mounts(insulator-engine-2)
replaced (torque rod assy.)-2
replaced steering colum
No Change!!!!!!!!!!

    (c)    The same poster wrote an update on Jan 2, 2018:

After 2 hearings at BBB Orlando, Nissan admitted Rouges made in South Korea have the problem ,but still says car functioning as designed vibration is my problem most people do not complain. Car got worse 4767.0 miles last week traded in .Thank god no one test drove it loss was minimal. Feel bad for who ever ends up with it .

    (d)    On April 22, 2019, another poster wrote:

We've been having issues with front E braking system. On the way to dealer engine stayed at 3k on interstate started jerking, losing power, symptoms were sporadic, dealer said nothing wrong. Took back 4 times, eventually the trans gave out and threw code, boom. Took 2 months to get trans replaced, nissan cvt parts on back order

from the problem vertic trans. The same problem is gonna happen, trans cooling is insufficient. Put in neutral while sitting in traffic for long periods of time, this is when the trans overheats

(e)    On February 10, 2021, another poster wrote:

Purchased a 2017 Rogue in December 2020 after having a 2014 rogue that had already had one transmission replaced and failed just to have another have to be replaced at 30k miles and just barely within warranty. I was told the newer model Rogues had fewer issues the transmissions etc etc so decided to give it a try again. Worst decision ever! By mid February 2021 this 2017 is showing the same signs as my previous 2014 Rogue. Took it to the Nissan dealer they hooked it up to diagnostic machine and stated it showed no codes indicating the transmission is slipping despite a service tech test driving it and admitting it was not shifting/accelerating properly. Tried to trade it in to get out from under yet another sh*t Nissan CVT a transmission and the Pensacola, FL dealership refused stating I'd have to put down $5k (coincidently also the cost of another transmission ) but they said it was because of course I'm upside down on the loan I took out. Called Nissan consumer care and filed my second claim with them for the 2017 Rogue and was told that since the dealership found no codes that I would not qualify for any buy back options. What was the dealership "fix?" "Installing" new "updates" to see if it improves anything. Do not waste you're money on ANY Nissan CVT vehicle. They run like complete trash and Nissan isn't fixing anything just replacing them every 30-40k miles and not being held accountable at all for their crappy business ethic. Worst choice I ever made! Nissan makes sh*t CVT transmissions on ALL models not just the sedans!

**2018 Rogue**

66.    A 2018 Rogue vehicle owner posted on CarComplaints.com on September 13, 2018:

My 2016 Nissan Rogue SV just blew out it's CVT at 43,000 miles. Repair covered under warranty. Total cost for the replacement was $3440. Also, a year ago my Rogue had the popular driver's seat assembly problem. The entire thing was replaced at the cost of $1250. Thankfully that repair made it under the warranty as well. That's close to $5000 in repairs on a car that's 2 1/2 years old. I'm not sure what happened, but Nissan's are junk now. Avoid Nissan, at least the ones with the CVTs, at all costs.

**Nissan Had Superior and Exclusive Knowledge of the CVT Defect**

67.    Nissan had superior and exclusive knowledge of the CVT Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

68.    Plaintiff is informed and believes and based thereon alleges that before Plaintiff purchased his Class Vehicle, and since 2013, Nissan knew about the CVT Defect through sources in its exclusive and/or superior knowledge, including pre-release testing data, early consumer complaints to Nissan and its dealers who are their agents for vehicle repairs, testing conducted in response to those complaints, high failure rates and replacement part sales data, consumer complaints to NHTSA (which Nissan monitors), by developing technical service bulletins in an effort to address the CVT Defect, and through other aggregate data from Nissan dealers about the problem.

69.    Nissan is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Nissan conducts tests, including pre-sale durability testing, on incoming components, including the Xtronic CVT, to verify the parts are free from defect and align with Nissan's specifications.[10] Thus, Nissan knew or should have known the CVT was defective and prone to put drivers in a dangerous position due to the inherent risk of the defect.

70.    Additionally, on information and belief, Nissan knew of the impact of this defect from the sheer number of reports received from dealerships. Nissan's customer relations department, which interacts with individual dealerships to identify potential common defects, has received numerous reports regarding the defect, which led to the release of the TSBs. Nissan's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed

---

[10] Akweli Parker, *How Car Testing Works*, HOWSTUFFWORKS.COM, http://auto.howstuffworks.com/car-driving-safety/safety-regulatory-devices/car-testing.htm ("The idea behind car testing is that it allows manufactures to work out all the kinks and potential problems of a model before it goes into full production.") (last viewed September 11, 2017).

vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

71.     Nissan's warranty department similarly analyzes and collects data submitted by its dealerships in order to identify trends in its vehicles. It is Nissan's policy that when a repair is made under warranty the dealership must provide Nissan with detailed documentation of the problem and the fix employed to correct it. Dealerships have an incentive to provide detailed information to Nissan, because they will be reimbursed for any repairs if the justification is sufficiently detailed.

72.     In fact, James ("Jim") Blenkarn, Nissan's Senior Manger, Systems Quality Improvement, has publicly confirmed Plaintiff's allegations. Mr. Blenkarn, in response to a question "On how Nissan monitors quality after a vehicle is launched" stated:

> "For the first six months, sometimes longer, of every new product, we have a team that focuses strictly on the product and examines every claim that comes in for that vehicle model. Our engineers have to target reporting something if it is a 0.5 incident rate. That's our threshold."[11]

73.     Nissan quietly issues notifications to its dealerships – but not consumers – in the form of its TSBs. Through TSBs, Nissan provides directions to its authorized dealerships for how to respond to customer complaints and requests for repairs.

74.     On March 12, 2015, Nissan issued TSB NTB15-013, applicable to 2013- 2014 Pathfinder and 2013-2014 Altima vehicles entitled "Nissan; Procedure to Clean CVT Transmission Fluid Coolers." The bulletin noted,

> **IMPORTANT**: Metal debris and friction material may become trapped in the radiator, cooling hoses, bypass valve or external CVT fluid cooler. This debris can contaminate the newly serviced transmission, control valve or torque converter. In severe cases this

---

[11] "5 Minutes with… Jim Blenkarn, senior manager, systems quality improvement, Nissan North America" Richard Truett, April 16, 2018 *Automotive News*. http://www.autonews.com/article/20180416/RETAIL05/180419990/5-minutes-with-jim-blenkarn-senior-manager-systems-quality

CLASS ACTION COMPLAINT

> debris can block or restrict flow and may cause damage to the
> newly serviced CVT. Original bulletin published.

It then directed, "When a CVT, control valve, or torque converter replacement is necessary for one of the Applied Vehicles, the CVT transmission fluid coolers (radiator based fluid cooler and external auxiliary cooler if present) <u>must be flushed</u>." On April 7, 2016, this TSB was superseded by NTB15-013b, which added 2014-2016 Rogue vehicles to the list of applied vehicles. Nissan thereafter revised the TSB three more times, with the currently operative iteration being NTB15-013e, issued on October 31, 2019.

75.    On October 7, 2015, Nissan issued TSB NTB15-083 for 2014-2016 Rogue vehicles, among other vehicles.  The TSB was issued to address customer complaints of "a transmission judder (shake, shudder, single or multiple bumps or vibration)."  The repair procedure provided was a reprogramming of the TCM.

76.    On January 25, 2016, Nissan issued TSB NTB15-102 for 2013-2015 Altima vehicles to address "[a] whine or grind type noise heard during acceleration and/or constant highway speeds. The repair procedure provided was to replace the gear kit, the oil pump kit, and the control valve followed by a flush of the CVT cooler and assembly, or in other conditions to replace the CVT. TSB NTB15-102 was superseded twice, with the currently operative iteration being NTB15-102b issued March 28, 2019 and expanded to include 2013-2017 Altimas as well as 2014-2017 Rogue vehicles.

77.    On April 1, 2016, Nissan issued TSB NTB15-084b for 2014-2016 Rogue vehicles, among other vehicles. This TSB, entitled "2013-2016 ALTIMA AND 2014-2016 ROGUE; CVT JUDDER AND DTC P17F0 OR P17F1 STORED" directed service technicians to replace either the valve body or the CVT assembly when a "customer reports a transmission judder (shake, shudder, single or multiple bumps or vibration)." On information and belief, the problem persisted and Service Bulletin NTB15-084b was superseded on April 18, 2017 with TSB NTB15-084c and again superseded on August 29, 2017 with TSB NTB15-084d. Meanwhile, on November 14, 2016 Nissan had also issued TSB NTB16-110 for 2015-2016 Altima vehicles when Diagnostic Trouble

Code (DTC) P0776 was stored, which TSB provided the instructions for specific internal repairs of the RE0F10D CVT, instead of replacing a complete assembly. After 6 revisions from February 9, 2017 to November 2, 2017, on December 19, 2018, Nissan issued TSB NTB16-110g, which combined the issues in the previous NTB16-110 variations as well as NTB15-084d. was entitled "2013-2017 ALTIMA AND 2014-2016 ROGUE; 4 CYLINDER WITH DTC P0776 AND/OR JUDDER WITH P17F0 OR P17F1 STORED" and included updated directions to replace either the valve body or the CVT assembly when a "customer reports a transmission judder (shake, shudder, single or multiple bumps or vibration)." However, this TSB was again limited and inadequate, as shown by Nissan's requiring 6 additional revisions to the TSB (NTB16-110h-NTB16-110m) from March 13, 2018 to October 1, 2019.

78. On January 23, 2017, Nissan issued TSB NTB16-121a for 2014-2016 Rogue vehicles, among other vehicles. This TSB is entitled "Voluntary Service Campaign 2013-2016 Altima and 2014-2016 Rogue; TCM Reprogramming." The TSB was intended to reprogram the Transmission Control Module to address customer complaints with the CVT.

79. On April 11, 2017, Nissan issued TSB NTB15-087a for 2014-2016 Rogue vehicles, among other vehicles. This TSB was entitled "CVT With 4 Cylinder Engine Valve Body Replacement With Confirmed DTC." The repair procedure listed on the TSB is a replacement of the CVT valve body assembly with a new one. On information and belief, the same repair procedure was issued for the other Nissan vehicles equipped with continuously variable transmission, on or before June of 2015, and identified as NTB15-037. NTB15-037 was superseded multiple times, with the currently operative iteration being NTB15-037d issued October 11, 2017.

80. On September 28, 2018, Nissan issued TSB NTB10-029d, applicable to 2014-2018 Rogues, 2014-2015 Rogue Selects, 2017-2018 Rogue Hybrids, and 2017-2018 Rogue Sport vehicles, among other vehicles. The TSB directed service technicians to replace the Electric Controlled Coupling for the rear final drive for vehicles where "[t]here is a vibration or judder feeling from the rear of the vehicle during the following conditions:

CLASS ACTION COMPLAINT

- when making turns

- on dry roads

- at low speeds (under 40 MPH)"

81.    On March 25, 2020, Nissan issued TSB NTB17-003a, applicable to 2014-2020 Rogues, 2017-2019 Rogue Hybrids, and 2017-2020 Rogue Sport vehicles, among other vehicles. This TSB was issued to address "FLUID LEAK CAUSED BY TRANSFER ASSEMBLY RIGHT SIDE DRIVE SHAFT SEAL." This TSB directed service technicians to reseal the transfer assembly.

82.    On information and believe, each TSB issued by Nissan was approved by managers, directors, and/or executives at Nissan. Therefore, on information and belief, Nissan's managers, directors, and/or executives knew, or should have known, about the CVT Defect, but refused to disclose the CVT Defect to prospective purchaser and owners, and/or actively concealed the CVT Defect.

83.    The existence of the CVT Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiff and other Class Members known that the Class Vehicles were equipped with transmissions subject to premature failure, they would have paid less for the Class Vehicles or would not have purchased or leased them.

84.    Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiff and Class Members further reasonably expect that Nissan will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Nissan to fail to disclose the CVT Defect to them and to continually deny it.

**Nissan Has Actively Concealed the CVT Defect**

85.    Despite its knowledge of the CVT Defect in the Class Vehicles, Nissan actively

concealed the existence and nature of the defect from Plaintiff and Class Members. Specifically, Nissan failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)     all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the CVT;

(b)     that the Class Vehicles, including the CVT, were not in good in working order, were defective, and were not fit for their intended purposes; and

(c)     that the Class Vehicles and the CVT were defective, despite the fact that Nissan learned of such defects as early as 2013.

86.     When consumers present their Class Vehicles to an authorized Nissan dealer for CVT repairs, rather than repair the problem under warranty, Nissan dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the CVT Defect.

87.     Nissan has caused Plaintiff and Class Members to expend money and/or time at its dealerships to diagnose, repair or replace the Class Vehicles' CVT and/or related components, despite Nissan's knowledge of the CVT Defect.

## Nissan Has Unjustly Retained a Substantial Benefit

88.      On information and belief, Plaintiff alleges that Nissan unlawfully failed to disclose the alleged defect to induce them and other putative Class Members to purchase or lease the Class Vehicles.

89.     Plaintiff alleges further that Nissan thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiff's.

90.     As discussed above, therefore, Plaintiff alleges that Nissan unlawfully induced them to purchase their respective Class Vehicles by concealing a material fact (the defective CVT) and that they would have paid less for the Class Vehicles, or not purchased them at all, had they known of the defect.

91.     Accordingly, Nissan's ill-gotten gains, benefits accrued in the form of increased

sales and profits resulting from the material omissions that did - and likely will continue to - deceive consumers, should be disgorged.

## CLASS ACTION ALLEGATIONS

92.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

93.     The Class and Subclass are defined as:

> **Class**:  All individuals in the United States who purchased or leased any 2014-2020 Nissan Rogue vehicle equipped with an Xtronic CVT (the "Nationwide Class" or "Class").
> **New York Subclass**: All members of the Nationwide Class who purchased or leased their Class Vehicles in the State of New York.

94.     Excluded from the Class and Subclass are: (1) Nissan, any entity or division in which Nissan has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to amend the Class and Subclass definitions if discovery and further investigation reveal that the Class and Subclass should be expanded or otherwise modified.

95.     <u>Numerosity</u>:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Nissan's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

96.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class in that Plaintiff,

like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Nissan.  The representative Plaintiff, like all Class Members, has been damaged by Nissan's misconduct in that he has incurred or will incur the cost of repairing or replacing the defective CVT and/or its components.  Furthermore, the factual bases of Nissan's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

97.    Commonality:  There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting Class Members individually.  These common legal and factual issues include the following:

(a)    Whether Class Vehicles suffer from defects relating to the CVT;

(b)    Whether the defects relating to the CVT constitute an unreasonable safety risk;

(c)    Whether Nissan knows about the defects pertaining to the CVT and, if so, how long Nissan has known of the defect;

(d)    Whether the defective nature of the CVT constitutes a material fact;

(e)    Whether Nissan has a duty to disclose the defective nature of the CVT to Plaintiff and Class Members;

(f)    Whether Plaintiff and the other Class Members are entitled to equitable relief, including a preliminary and/or permanent injunction;

(g)    Whether Nissan knew or reasonably should have known of the defects pertaining to the CVT before it sold and leased Class Vehicles to Class Members;

(h)    Whether Nissan should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective CVT and/or its components;

(i)    Whether Nissan is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective

CLASS ACTION COMPLAINT

CVT and/or its components;

(j)      Whether Nissan breached the implied warranty of merchantability pursuant to the Magnuson-Moss Act;

(k)      Whether Nissan breached the implied warranty of merchantability under New York law;

(l)      Whether Nissan breached express warranties pursuant to the Magnuson-Moss Act;

(m)      Whether Nissan breached express warranties under New York law;

(n)      Whether Nissan violated N.Y. Gen. Bus. Law §§ 349, 350;

(o)      Whether Nissan is liable for fraudulent omission;

(p)      Whether Nissan was unjustly enriched.

98.    <u>Adequate Representation</u>:  Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions involving cars, and they intend to prosecute this action vigorously.

99.    <u>Predominance and Superiority</u>:  Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Nissan's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Nissan's misconduct.  Absent a class action, Class Members will continue to incur damages, and Nissan's misconduct will continue without remedy or relief.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

CLASS ACTION COMPLAINT

# FIRST CAUSE OF ACTION

## (Breach of Express and Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2303 *et seq.*)

100.    Plaintiff, individually and on behalf of the Class or, in the alternative, for the New York Subclass, hereby incorporates the allegations in paragraphs 1 through 86 as though fully set forth herein.

101.    Plaintiff asserts this cause of action individually and on behalf of the Class or, in the alternative, for the New York Subclass.

102.    The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

103.    Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

104.    Nissan is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

105.    Every Class Vehicle is backed by a New Vehicle Limited Warranty ("Warranty"). Nissan's Warranty covers any repairs needed to correct defects in materials or workmanship of covered parts. The basic coverage period lasts 36 months or 36,000 miles, whichever comes first, and the powertrain coverage lasts 60 months or 60,000 miles, whichever comes first. The powertrain coverage specifically applies to the engine, transmission and transaxle, drivetrain, and restraint system. Nissan explicitly extended the Warranty to all purchasers, lessees, and subsequent purchasers and lessees of Class Vehicles throughout the United States. The Warranty assured consumers that Nissan would repair any defect in materials or workmanship under normal use.

106.    On information and belief, Nissan breached the express warranties by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

107.    Plaintiff gave Nissan notice of its breach by presenting his vehicle to a Nissan

dealership for repairs that were not made.  Plaintiff also gave notice to Nissan by letter dated December 8, 2020.

108.    However, Plaintiff was not required to notify Nissan of the breach and/or was not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

109.    Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the Class Vehicles pursuant to the express warranty, Nissan falsely informed class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVT with equally defective components, without actually repairing the vehicles.

110.    Moreover, Nissan impliedly warranted that the Class Vehicles were of merchantable quality and fit for use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their CVT were manufactured, supplied, distributed, and/or sold by Nissan would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their CVT would be fit for their intended use while the Class Vehicles were being operated.

111.    Contrary to the applicable implied warranties, the Class Vehicles and their CVTs at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective design of their CVT.

112.    Nissan's breach of express and implied warranties has deprived Plaintiff and Class Members of the benefit of their bargain.

113.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in

this suit.

114. Nissan has been afforded a reasonable opportunity to cure its breaches, including when Plaintiff and Class Members brought their vehicles in for diagnoses and repair of the CVT.

115. As a direct and proximate cause of Nissan's breach of express and implied warranties, Plaintiff and Class Members sustained damages and other losses in an amount to be determined at trial. Nissan's conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

116. As a result of Nissan's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiff and Class Members have incurred damages.

## SECOND CAUSE OF ACTION
### (Breach of Express Warranty)
**On behalf of the Class, or Alternatively, the New York Subclass and their Named Representative**

117. Plaintiff, individually and on behalf of the Class or, in the alternative, for the New York Subclass, hereby incorporates the allegations in paragraphs 1 through 86 as though fully set forth herein.

118. Plaintiff asserts this cause of action individually and on behalf of the Class or, in the alternative, for the New York Subclass.

119. Each Class Vehicle sold by Nissan included an express Warranty that covered, in part, the transmission and warranted that it would repair or replace any defects in materials and workmanship in the Class Vehicles.

120. Nissan provided all purchasers and lessees of the Class Vehicles with a written Warranty that "begins on the date the vehicle is delivered to the first retail buyer or put into use, whichever is earlier." Under the Warranty's Powertrain Coverage, Nissan expressly warranted that the Warranty "covers any repairs needed to correct defects in materials or workmanship." The Warranty's Powertrain Coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under its Warranty, including

Case 3:21-cv-00232   Document 1   Filed 03/17/21   Page 51 of 60 PageID #: 51

CLASS ACTION COMPLAINT

the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

121.    Nissan maintains a full-time Quality Engineer for "Total Customer Satisfaction," at its headquarters near Nashville, Tennessee, whose responsibilities include analysis of field data (warranty, JD Power, IQS, etc.) to identify priority issues to be addressed, report quality results and action plans to executive management, perform static and dynamic evaluations of vehicle quality, and incorporate feedback from current model quality into the new product development process. The Quality Engineer reports to the Office of the Overseas Chief Quality Engineer (OCQE).

122.    In addition, Nissan maintains a full-time Quality Process Engineer at its headquarters near Nashville, Tennessee whose responsibilities are to analyze warranty data and reduce warranty claims and develop and present solutions to field concerns in formal reviews with executive management.

123.    Through its personnel, whose responsibilities include monitoring defects, analyzing warranty and field data, and reporting findings to executive management, as well as through its highly developed internal information and reporting systems, Defendant has been made aware of the defective CVT for years, but failed to notify Plaintiff and members of the proposed Class and Subclass during the warranty period and failed to repair the defect free of charge.

124.    Plaintiff also gave notice to Nissan of their vehicles' defect through its dealer and agent and through its customer service division, and gave Nissan a chance to repair the defect under the express warranty. Nissan was also on notice of the defect by virtue of the NHTSA and other complaints set forth herein, as well as its internal investigation of the defect in Class Vehicles as early as 2013.

125.    Nissan breached its warranties by offering for sale and selling defective vehicles that were by construction defective and unsafe and refusing to recognize or permanently repair the

defect, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

126.    Nissan's warranty to repair the Class Vehicles fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff, the Class, and the Subclass whole because Nissan has been unable to repair the defect or has refused to replace the transmission with a different, functional transmission. As Nissan's Technical Service Bulletins demonstrate, Nissan is incapable of repairing the defect, despite repeated attempts to do so.

127.    Accordingly, Plaintiff, the Class, and the Subclass are not limited to the limited warranty of "repair" and Plaintiff, the Class, and the Subclass seek all remedies allowed by law.

128.    Plaintiff and the Class or, in the alternative, the New York Subclass, seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, restitution, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all class, and appropriate equitable relief including injunctive relief, a declaratory judgment, and a court order enjoining Nissan's wrongful acts and practices, and any other relief to which Plaintiff and the Class or the New York Subclass may be entitled.

**THIRD CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability)**
**On behalf of the Class, or Alternatively, the New York Subclass and their Named Representative**

129.    Plaintiff, individually and on behalf of the Class or, in the alternative, for the New York Subclass, hereby incorporates the allegations in paragraphs 1 through 86 as though fully set forth herein.

130.    Plaintiff asserts this cause of action individually and on behalf of the Class or, in the alternative, for the New York Subclass.

131.    Nissan impliedly warranted that the Class Vehicles, which it designed, manufactured, sold, or leased to Plaintiff and the members of the Class or, in the alternative, the New York Subclass, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings.

132.     Because the Class Vehicles are equipped with a defective transmission system, the vehicles purchased or leased and used by Plaintiff and the members of the Class and the New York Subclass are unsafe, unfit for their ordinary use when sold, and not merchantable. Nissan breached the implied warranty of merchantability, as stated in the Uniform Commercial Code, by selling or leasing Class Vehicles to Plaintiff and the members of the Class and the New York Subclass.

133.     Plaintiff and the members of the Class and the New York Subclass seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, restitution, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and appropriate equitable relief including injunctive relief, a declaratory judgment, and a court order enjoining Nissan's wrongful acts and practices and any other relief to which Plaintiff and the members of the Class or, in the alternative, the New York Subclass may be entitled.

## FOURTH CAUSE OF ACTION
### Violations of the New York Deceptive Acts and Practices Act
### N.Y. Gen. Bus. Law §§ 349, 350
### On Behalf of Plaintiff and the New York Subclass

134.     Plaintiff, individually and on behalf of the Class or, in the alternative, for the New York Subclass, hereby incorporates the allegations in paragraphs 1 through 86 as though fully set forth herein.

135.     Plaintiff asserts this cause of action individually and on behalf of the New York Subclass Members.

136.     Plaintiff and New York Subclass members are "persons" within the meaning of the New York General Business Law ("GBL"). N.Y. Gen. Bus. Law § 349(h).

137.     Nissan is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the GBL. N.Y. Gen. Bus. Law § 349(b).

138.     Nissan's conduct as alleged herein occurred in "the conduct of business, trade or commerce" within the meaning of GBL section 350.

139.     Under GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

CLASS ACTION COMPLAINT

140.     Section 350 also makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity…." N.Y. Gen. Bus. Law § 350-a.

141.     Nissan sold and/or leased the Class Vehicles knowingly concealing that they contained the alleged CVT Defect.

142.     Nissan's practices, acts, policies and course of conduct violated GBL §§ 349 and 350 in that:

(a)     At the time of sale, Nissan knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose to Plaintiff and New York Subclass Members the known defects in the transmissions and the known risks associated therewith.

(b)     Thereafter, Nissan failed to disclose the defects to Plaintiff and the New York Subclass Members, either through warnings or recall notices, and/or actively concealed from them the fact that the Class Vehicles' transmissions were defective, despite the fact that the company knew of such defects: (1) at the time of manufacturing, during pre-market testing; (2) at the point where NHTSA began to record complaints about the defect in June 2014; or, at the latest, (3) from its own Technical Service Bulletins dating back to March 2015.

(c)     Nissan forced Plaintiff and the New York Subclass Members to expend sums of money at its dealerships to repair and/or replace the defective transmissions, despite the fact that Nissan had prior knowledge of the defects at the time of purchase.

(d)     Additionally, Nissan, in administering the Warranty, engaged in materially misleading deceptive acts and practices by replacing failing transmissions

CLASS ACTION COMPLAINT

with equally defective units and denying the existence of and refusing to repair the widely known problems with the transmissions without a particular code appearing in the vehicles' computers.

(e)     Furthermore, Nissan engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good working order, merchantable, and not defective, despite Nissan's knowledge that the vehicles would not perform as intended, represented, and warranted and that the above described defects would cause purchasers to incur significant out-of-pocket costs and expenses.

143.    The aforementioned conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that Nissan has, through knowing, intentional, and material omissions, concealed the true, defective nature of the transmissions in Nissan Rogues.

144.    By making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Nissan has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

145.    Nissan's misrepresentations of fact and/or material omissions caused injury and actual damages to Plaintiff and the New York Subclass members.

146.    Members of the public were deceived by Nissan's failure to disclose and could not discover the defect themselves before suffering their injuries. As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices Plaintiff and the New York Subclass members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

147.    Plaintiff and the New York Subclass members seek restitution of the substantial sums of money they expended to replace their Nissan Rogues' defective transmissions, which Nissan knew about prior to the sale of the Class Vehicles and further seek statutory damages or

actual damages, whichever is greater for their consumer-related injuries.

148.    Plaintiff and the New York Subclass members also seek appropriate equitable relief, including an order requiring Nissan to adequately disclose and remediate the transmission defect and an order enjoining Nissan from incorporating the defective transmissions into its vehicles in the future.

## FIFTH CAUSE OF ACTION
### (For Unjust Enrichment)

149.    Plaintiff, individually and on behalf of the Class or, in the alternative, for the New York Subclass, hereby incorporates the allegations in paragraphs 1 through 90 as though fully set forth herein.

150.    Plaintiff asserts this cause of action individually and on behalf of the Class or, in the alternative, for the New York Subclass.

151.    As a direct and proximate result of Nissan's failure to disclose known defects, Nissan has profited through the sale and lease of the Class Vehicles.  Although these vehicles are purchased through Nissan's agents, the money from the vehicle sales flows directly back to Nissan.

152.    Additionally, as a direct and proximate result of Nissan's failure to disclose known defects in the Class Vehicles, Plaintiff and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Nissan.

153.    Nissan has been unjustly enriched due to the known defects in the Class Vehicles through the use money paid that earned interest or otherwise added to Nissan's profits when said money should have remained with Plaintiff and Class Members.

154.    As a result of the Nissan's unjust enrichment, Plaintiff and Class Members have suffered damages.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* and Fed. R. Civ. P. 57)

155.    Plaintiff, individually and on behalf of the Class or, in the alternative, for the New York Subclass, hereby incorporates the allegations in paragraphs 1 through 90 as though fully set

forth herein.

156.    Plaintiff asserts this cause of action individually and on behalf of the Class or, in the alternative, for the New York Subclass.

157.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998).

158.    There is an actual controversy between Nissan and Plaintiff concerning whether the Vehicles' defect creates an unreasonable safety hazard.

159.    Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

160.    Despite long knowing the nature of the Vehicles' defect and its likelihood of placing Plaintiff and the members of the Class and New York Subclass and the public at risk of grave injury, Nissan refuses to publicly acknowledge the Vehicles' dangerous defect. Instead, Nissan has unsuccessfully attempted to remediate the defect without advising its consumers and other members of the public of the defect.

161.    Accordingly, based on Nissan's failure to act, Plaintiff seeks a declaration that the Vehicles are defective, as alleged herein. The defective nature of the Vehicles is material and requires disclosure to all persons who own them.

162.    The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective nature of the Vehicles and the reasons for their repeated failure. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## RELIEF REQUESTED

163.    Plaintiff, individually and all others similarly situated, request the Court to enter judgment against Nissan, as follows:

(a)    An order certifying the proposed Class and Subclass, designating Plaintiff

as named representative of the Class, and designating the undersigned as Class Counsel;

(b)     A declaration that Nissan is financially responsible for notifying all Class Members about the defective nature of the CVT, including the need for periodic maintenance;

(c)     An order enjoining Nissan from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Nissan to issue a voluntary recall for the Class Vehicles pursuant to. 49 U.S.C. § 30118(a); compelling Nissan to remove, repair, and/or replace the Class Vehicles' defective CVT and/or its components with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Nissan from selling the Class Vehicles with the misleading information; and/or compelling Nissan to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d)     An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e)     Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(f)     A declaration that Nissan must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiff and Class Members;

(g)     An award of attorneys' fees and costs, as allowed by law;

(h)     An award of pre-judgment and post-judgment interest, as provided by law;

(i)     Leave to amend the Complaint to conform to the evidence produced at trial; and

(j)     Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable.

Dated: March 17, 2021

Respectfully submitted,

*/s/ Caroline Ramsey Taylor, Esq.*
WHITFIELD BRYSON LLP
518 Monroe Street
Nashville, TN 37208
Telephone: (615) 921-6500
Facsimile: (615) 921-6501
caroline@whitfieldbryson.com

Lawrence Deutsch*
Jeffrey L. Osterwise*
Amey J. Park*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.:    (215) 875-3000
Fax:    (215) 875-4604
ldeutsch@bm.net
josterwise@bm.net
apark@bm.net

*Attorneys for Plaintiff and the Class and the Subclass*

*\*Motion for pro hac vice admission forthcoming*